**Robert T. WRIGHT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted May 17, 1979.

Decided Aug. 6, 1979.

Louis L. Redding and Christine White-head, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Fred S. Silverman, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

Arguing that the Delaware Theft of Services Statute, 11 *Del.C.* § 845, is unconstitutionally void for vagueness, that there was insufficient evidence of intent to support his conviction thereunder, and that prejudicial conduct of the Trial Judge deprived him of a fair trial, Robert Wright asks this Court to reverse his conviction for theft of electrical services.

I.

After Wright made a payment on his account with Delmarva Power and Light Company (hereafter D.P. & L.) on March 2, 1977, a billing dispute arose concerning the amount Wright owed D.P. & L. for electric service at his home. In June, Wright gave D.P. & L. a check for $187.11, but that check was returned marked "insufficient funds." On July 7th, D.P. & L. disconnected Wright's electric service by placing insulated boots or sleeves, which act as circuit breakers, on the four prongs of the meter. The meter was then sealed and a sticker placed on it warning that violators would be prosecuted for tampering with or rearranging the meter. Subsequently, the meter was opened and the insulating boots were removed, allowing electricity to flow into the Wright residence again. D.P. & L. resealed the meter on August 11. When the boots were removed a second time, D.P. & L. resealed the meter on August 29. On October 31, a Company collection investigator discovered that the service at Wright's home was still operating. Wright told the investigator that he had cut the seal and reconnected the meter, but promised to go to D.P. & L.'s office to settle the controversy over his account. Because Wright had not settled his bill, D.P. & L. resealed his meter on November 8. Again, the defendant admitted to D.P. & L. personnel that he had reconnected his electric service. On December 15, upon finding the service again reconnected, D.P. & L. disconnected Wright's service underground, with the assistance of the police.

From July 7, when Wright's meter was first disconnected, through December 15, when the service was finally disconnected, more than $300 worth of electricity was consumed by Wright for which he failed to pay.

## II.

The General Assembly amended the Theft of Services Statute, 11 *Del.C.* § 845, in 1978. However, since the offenses charged in this case occurred prior to the Amendment, the former version of the Statute applies. That Statute provided as follows:

"A person commits theft when, with the intent specified in § 841 [1] of this Criminal Code he obtains services which he knows are available only for compensation by deception, threat, false token, false representation or statement or by installing, rearranging or tampering with any facility or equipment or by any other trick, contrivance or any other device to avoid payment for the services.

"In any prosecution for theft involving theft of services the accused's intention not to pay for the services may not be established by or inferred from the fact alone that he did not pay for them."

The defendant argues that this Statute is unconstitutionally vague on its face, and as applied to the facts of this case, because he could not have known that his actions would constitute "tampering with . . . equipment . . . to avoid payment for services." He contends that the Statute must be held unconstitutionally void for vagueness because it is subject to differing interpretations.

■ As "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts

of the case at hand," *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975), we need only evaluate the defendant's argument in the light of the facts of his case. To this end, we employ the test of *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), where the Supreme Court specified:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . ; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

That essential of due process embodies the principle that a statute must be clear enough to notify a person of what is unlawful so that the individual will be free to choose between lawful and unlawful conduct.

■ Thus, we must decide whether 11 *Del.C.* § 845 adequately notified Wright that his actions would be unlawful. In other words, should he have known that, in the circumstances of his case, his repeated breaking of the D.P. & L. seals, removing of the insulating boots, and reconnecting of his electricity without payment, would constitute "tampering with any facility or equipment . . . to avoid payment for the services"?

Since § 845 provides that the theft of services there prohibited requires "the intent specified in § 841", violation of § 845 requires the intent to "deprive" or "appropriate." Since these terms are specifically

---

1. 11 *Del.C.* § 841 provides:

"§ 841. Theft; class E felony; class A misdemeanor.

"A person is guilty of theft when he takes, exercises control over or obtains property of another person intending to deprive him of it or appropriate it. Theft includes the acts described in §§ 842 through 846.

"A person is guilty of theft if he, in any capacity legally receives, takes, exercises control over, or obtains property of another which is the subject of theft, and fraudulently converts same to his own use.

"Theft is a class A misdemeanor, unless the value of the property is $300 or more, in which case it is a class E felony."

defined in §§ 857(1) and (2),[2] this portion of the Statute is sufficiently clear to withstand a vagueness challenge under the circumstances of this case. Furthermore, since § 857(8) provides that " '[s]ervices' include labor . . . [or] electricity," the defendant had adequate notice that his appropriation of electricity could constitute theft of "services."

Thus, the vagueness question narrows down to whether the term "tampering" is so vague that it failed to adequately notify the defendant that his actions would be unlawful. Because tampering is not defined in the Criminal Code, "it has its commonly accepted meaning." 11 *Del.C.* § 221(c). "Tampering has been defined as the making of unauthorized alterations or changes." *State v. Arnett*, Iowa, 168 N.W.2d 807, 808 (1969). *Webster's New International Dictionary* (2d Ed., 1951) defines tamper as "to meddle so as to alter a thing." *The American Heritage Dictionary of the English Language* (1st Ed., 1973) states that "tamper" means "to interfere in a harmful manner."

We conclude that the accepted meaning of "tampering" is clear enough so that a person of "common" or ordinary intelligence would understand its meaning.[3] Unquestionably, a person of such intelligence should know that repeatedly cutting the seals and opening an electricity meter, removing the meter, removing the insulating boots, and reinserting the meter would constitute "tampering", as that term is employed in 11 *Del.C.* § 845. We hold therefore, that, as applied to the facts of this case, the Statute is not unconstitutionally void for vagueness, and that the defendant's conduct was clearly within its purview.[4]

### III.

■ The defendant also contends that the State presented insufficient evidence to sustain its burden under § 845 of proving that Wright had the prerequisite intent of "appropriating" the electrical service without payment therefor, within the meaning of §§ 841 and 857.

The defendant correctly contends that § 845 requires that such intent be shown by something more than non-payment. However, in this case, the defendant's course of conduct provides ample evidence from which the jury could have concluded that the defendant had the intent "to appropriate" the service as defined in § 857(2) and required by § 845.

There is no merit to this contention.

### IV.

Finally, the defendant contends that prejudicial and improper comments by the Trial Judge denied him a fair and impartial trial.

Although the defendant was initially represented by counsel, during his attorney's cross-examination of the State's first witness he dismissed his attorney and began representing himself. Thereafter, because of his apparent inability to conduct a proper examination of witnesses, it is manifest

---

2. 11 *Del.C.* § 857 provides:

"§ 857. Theft and related offenses; definitions.

"For purposes of §§ 841 to 856:

"(1) 'Deprive' means to withhold property of another person permanently or for so extended a period or under such circumstances as to withhold a major portion of its economic value or benefit, or with intent to restore it only upon payment of a reward or other compensation; or to dispose of property of another person so as to make it unlikely that the owner will recover it.

"(2) 'Appropriate' means to exercise control, or to aid a third person to exercise control, over property of another person permanently or for so extended a period or under such circumstances as to acquire a major portion of its economic value or benefit; or to dispose of property for the benefit of the actor or a third person. * * * "

3. There is no intimation that Wright was not of ordinary intelligence.

4. It is noteworthy that the term "tampering" has survived void for vagueness challenges in many jurisdictions where statutes or regulations prohibit "tampering with a motor vehicle." See, e. g., *State v. Hale*, Mo., 463 S.W.2d 869, 871–72 (1971); *In re R.F.H.*, D.C.App., 354 A.2d 844, 845–47 (1976); *People v. Exxon*, Ill. App.Ct., 41 Ill.App.3d 599, 354 N.E.2d 581, 584–85 (1976).

from the record that the Trial Judge became impatient and irritated with the defendant and, in the presence of the jury, frequently expressed his feelings of impatience and irritation about the manner in which the defendant was conducting his defense. The Trial Judge repeatedly told the defendant that he was "wasting time", and instructed him to "move along." When the defendant asked whether a witness could be directed to bring in a document the next day, the Trial Judge responded: "If she decides to bring it in voluntarily. If not, you will have to issue a subpoena. Since you have taken over your own case, I presume you know how to do that." When the defendant attempted to establish a defense based on D.P. & L's improper billing, the Trial Judge responded:

> "What are you into now? Are you questioning the bill that they sent you for disconnecting and so forth? That has nothing to do with this case. I've tried to tell you that. I know you feel that you were overcharged. I know you feel you have been badly treated by the electric company. That has nothing to do with this case."

Although the defendant repeatedly attempted to submit evidence regarding his billing dispute with D.P. & L., the Trial Judge refused to permit this material to be considered by the jury. For example, the Trial Judge stated:

> "This is not a civil suit. This hasn't got a thing to do with this case . . . I'm not charging Delmarva Power & Light with theft. You're charged with it. Let's get into that. What they charge

you to resume your service hasn't got a bit more to do with this case than the cost of the Delaware Memorial Bridge. I said it doesn't and I ask you to go on.

> "Mr. Wright, I am going to tell you it's law you don't understand. If a company overcharges, and a man can assault an officer, if you think that's a defense, you're going to have to get something else. You are charged with assaulting a policeman [5] and theft of electricity. We are not going to try Delmarva Power and Light in this court room. We are going to try your case."

■ Undue impatience, irritation, or sarcasm must be avoided by a Delaware Judge,[6] especially when a party is acting as his own counsel. "Article IV, § 19 of the Delaware Constitution [7] prohibits a trial judge from commenting on the evidence. This prohibition applies equally to the judge's instructions to the jury and to comments made by the judge in the course of the trial." *State Highway Department v. Buzzuto*, Del.Supr., 264 A.2d 347, 351 (1970). Furthermore, a Trial Judge has a duty "to avoid any language or any conduct which would lead the Jury to suspect that the Judge is favorable to one party to the trial . . . ." *Buckley v. R.H. Johnson & Co.*, Del.Super., 2 Terry 546, 25 A.2d 392, 397 (1942).

■ By ruling that evidence pertaining to his billing dispute with D.P. & L. was irrelevant, the Trial Judge prevented the defendant from establishing an affirmative defense as provided by 11 *Del.C.* § 847(a).[8]

---

5. The defendant was not charged with assaulting a policeman. He was charged with offensive touching, but the jury returned a verdict of not guilty on this charge.

6. See The Delaware Judges' Code of Judicial Conduct, Canon 3 A(3) providing:
"A Judge Should Perform the Duties of His Office Impartially and Diligently
"The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
"A. Adjudicative Responsibilities.
 \* \* \* \* \* \*

"(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control."

7. Article IV, § 19 provides: "Judges shall not charge juries with respect to matters of fact, but may state questions of fact in issue and declare the law."

8. 11 *Del.C.* § 847(a) provides:
"§ 847. Theft, extortion; claim of right as an affirmative defense.

690

The defendant's attempted strategy seems to have been to show that his bills were improper and in good faith controversy; that instead of rectifying his account, D.P. & L. simply turned off his service; and that he openly reconnected his electricity because he believed it had been turned off improperly. It is clear that the General Assembly intended to permit such affirmative defense under § 847(a). Therefore, the Trial Judge's rulings that D.P. & L.'s overcharges had nothing to do with the defendant's case were erroneous.

 Although the defendant did not specifically object to the Trial Judge's remarks and rulings above mentioned, the plain error rule is applied. Perhaps, either the comments and remarks of the Trial Judge, or the disallowance of the affirmative defense, standing alone, may not have constituted plain error. However, where there are several errors in a trial, a reviewing court must weigh the cumulative impact to determine whether there was plain error. *United States v. Freeman*, D.C.Cir., 169 U.S.App.D.C. 73, 77, 514 F.2d 1314, 1318 (1972).

We conclude that the cumulative effect of depriving the defendant of his affirmative defense, plus the objectionable comments and remarks of the Trial Judge, operated to deprive the defendant of a fair trial. "Without stating whether or not, in our opinion, any one of these errors standing alone carries with it sufficient prejudice to require the award of a new trial, we are of the opinion that cumulatively they amount to prejudice and, consequently, a new trial must be awarded." *Robelen Piano Co. v. Di Fonzo*, Del.Supr., 169 A.2d 240, 248 (1961).

Although we reverse, we do not mean to approve the defendant's course of conduct. On the contrary, we think he invited his present predicament by the intemperate and unreasonable approaches he adopted in his efforts to solve his problem.

\* \* \* \* \* \* \*

Reversed and remanded for a new trial on the charge of Theft of Services.

"(a) In any prosecution for theft or extortion it is an affirmative defense that the property was appropriated by the actor under a claim of right, made in good faith, to do substantially what he did in the manner in which it was done. \* \* \*"