**John P. ZIMMERMAN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: April 13, 1993.
Decided: July 29, 1993.

---

John S. Malik, (argued), Wilmington, for appellant.

Gary A. Myers (argued), Deputy Atty. Gen., Dept. of Justice, Georgetown, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court En Banc.

HORSEY, Justice:

This criminal action stems from a dispute over restoration work to be performed on an automobile. Appellant, John Zimmerman ("Zimmerman"), appeals the judgment of the Superior Court upon convictions after jury trial of Assault Second Degree, Conspiracy Second Degree, Criminal Solicitation Second Degree and Attempted Extortion. Zimmerman contends that the trial court abused its discretion by not granting his motions for mistrial or new trial. Zimmerman also claims that the trial court committed error of law in refusing to instruct the jury as to defendant's affirmative defense of a "claim of right" to the charge of attempted extortion.

While we find that the Superior Court did not abuse its discretion in denying a mistrial or new trial, we find that the court committed error of law in its instructions on attempted extortion. Under the facts, defendant properly invoked 11 *Del.C.* § 847(a) entitling defendant to assert a claim of right defense. Accordingly, we affirm in part, reverse in part and remand for a new trial limited to the charge of attempted extortion.

I

In October 1989, defendant Zimmerman had his 1966 Chevrolet towed to Eric Frye's

("Frye") garage and the parties agreed that Frye would perform restoration work on the car. By April 1991, the parties' contractual relationship had soured, primarily because Zimmerman had paid Frye more than $3,000 but the work was not yet completed. As a result, Zimmerman retrieved his car and Frye agreed to refund him $1,200 of the amount already paid. Trouble arose a short time thereafter when, due to financial difficulties suffered by his garage, Frye did not pay Zimmerman the promised refund.

Shortly after he retrieved his car Zimmerman, dissatisfied that Frye had not refunded the money, commenced making telephone calls to Frye demanding the promised $1,200 payment. On May 29, 1991, Zimmerman and another man, identified at trial as Brian Resop ("Resop"), arrived at Frye's garage. Zimmerman entered the garage, allegedly mumbled something inaudible to Frye, and left the garage to stand in the surrounding yard area. Thereafter, Resop entered the garage and proceeded to assault Frye, breaking his nose, while Zimmerman as well as two other individuals, both friends of Frye, Greg Turcol ("Turcol") and Ed Pretko ("Pretko"), watched.

Once Resop fled the scene, Zimmerman re-entered the garage. According to Frye, Zimmerman asked Frye when he could expect to receive the $1,200 refund. Frye testified that Zimmerman then demanded an additional $400 because Zimmerman stated that he had paid Resop to break Frye's legs and Frye "got off easy" with only a broken nose. Frye further testified that when Turcol and Pretko inquired what was happening, Zimmerman told them to mind their own business. Zimmerman contends that Frye's testimony regarding these "statements" by him is unsupported by the record because he never made them.

Later on the same day of the beating, Frye received a telephone call from Zimmerman while Frye was at his father's place of business. Using a miniature tape recorder provided by his father, Frye recorded the latter portion of the conversation, without Zimmerman's knowledge, and unsuccessfully attempted to get Zimmerman to "confess" to either the assault or paying Resop to perform the beating. Frye further testified that, after Zimmerman was arrested, he received other phone calls from Zimmerman threatening Frye with harm if he testified at Zimmerman's trial for criminal assault.

Prior to trial, Turcol and Pretko told police that they believed Zimmerman was "crazy" and Turcol admitted that he feared Zimmerman. Pretko also gave the police a statement corroborating Frye's version of the assault. Pretko and Turcol also executed, at the request of Zimmerman's attorney, statements allegedly "exonerating" Zimmerman.

Also in its case-in-chief, the State, over defendant's objections, secured the admission into evidence of Frye's tape recording of his conversation with Zimmerman, which contained many obscenities uttered by both parties. The court excluded only that portion of the taped conversation which contained a racial expletive uttered by Zimmerman and directed at one of Frye's employees. The parties agreed that when the prosecutor played the tape before the jury, the racial slur would be omitted. Despite the court's later reminder to the State not to play the excluded portion of the tape, and the prosecutor's assurance that he would not, the State played the excluded portion of the tape as well. Zimmerman acknowledged that the playing was inadvertent, but nevertheless moved for a mistrial, which the court denied. The court then immediately issued a curative instruction to the jury.[1]

During counsel's review of the proposed jury instruction on the extortion charge, Zimmerman's attorney requested that the court instruct the jury on his asserted statutory affirmative defense of claim of right under 11 *Del.C.* § 847. The court declined to do so primarily on a finding of contrary legislative intent.

1. Later, at the jury's request during its deliberations, the tape was replayed in the courtroom

without the remark being heard.

After the jury found Zimmerman guilty of one count each of Assault Second Degree, Conspiracy Second Degree, Criminal Solicitation Second Degree and Attempted Extortion, Zimmerman, seeking a new trial, contended that the State had violated his constitutional rights by the prosecutor's mistakenly permitting the jury to hear the racial slur. Superior Court, by memorandum opinion dated January 29, 1992, denied the motion and Zimmerman then appealed.

On appeal, Zimmerman raises two claims of error. First, Zimmerman renews his assertion that the State violated his constitutional rights when it permitted the statement containing the racial slur to be presented to the jury. Second, Zimmerman contends that the court committed legal error when it refused to instruct the jury on the affirmative defense of a claim of right to the charge of attempted extortion.

## II

Zimmerman's constitutional claim is premised on the trial court's alleged abuse of discretion in denying his motions for mistrial and new trial. Zimmerman asserts that the State's concededly inadvertent playing of the racial slur violated his constitutional rights to due process and equal protection and denied him a fair trial. He originally relied on *Dawson v. Delaware,* —— U.S. ——, 111 S.Ct. 1412, 113 L.Ed.2d 465 (1992), and *Weddington v. State,* Del. Supr., 545 A.2d 607 (1988). The State denies that any issue of race was injected into the trial by the State in its inadvertent

playing of the racial remark, and in the alternative contends that under the three-part due process analysis articulated in *Hughes v. State,* Del.Supr., 437 A.2d 559, 571 (1981), the claim is without merit.

■ While a claim of constitutional error was originally asserted, Zimmerman now agrees that our standard of review is whether the trial court should be found to have abused its discretion in permitting the racial remark to be played before the jury. Hence, the *Hughes* harmless error analysis is determinative of this issue on appeal.[2] *See Hope v. State,* Del.Supr., 570 A.2d 1185, 1189 (1990) (denial of motion for mistrial reviewed for abuse of discretion); *McCloskey v. State,* Del.Supr., 457 A.2d 332, 337 (1983) (motion for mistrial directed to sound discretion of trial judge); *Hutchins v. State,* Del.Supr., 153 A.2d 204, 206–07 (1959) (motion for new trial addressed to sound discretion of trial court).[3] Under an abuse of discretion standard, this Court will disturb a discretionary ruling of the trial court only when the ruling is based upon unreasonable or capricious grounds. *See Chavin v. Cope,* Del.Supr., 243 A.2d 694, 699 (1968); *Pitts v. White,* Del.Supr., 109 A.2d 786, 788 (1954).

■ We find that the Superior Court did not abuse its discretion in refusing to grant defendant either a mistrial or a new trial. We conclude that the court acted entirely properly by promptly giving the jury a cautionary instruction after the con-

**2.** Zimmerman impliedly concedes that his original reliance on *Dawson* and *Weddington* was misplaced. *Weddington* involved opposing counsel's *intentional* injection of racial prejudice into the case, which had no factual basis. Zimmerman may not raise a claim of constitutional error premised on his own utterance of a racial expletive, during a conversation that was relevant to the State's case against Zimmerman, but was ruled to be inadmissible as prejudicial, and which *inadvertently* reached the jury. *See Weber v. State,* Del.Supr., 547 A.2d 948 (1988). Thus, *Weddington's* holding, that an opposing party's improper injection of race into a case "in the absence of compelling justification" can *never* be treated as harmless error [545 A.2d at 615] is inapposite. Moreover, as our later decision in *Dawson* makes clear, even if a trial judge makes an erroneous evidentiary ruling and per-

mits an inappropriate injection of a racist issue (which does have a factual basis) by opposing counsel, it may be the subject of a harmless error analysis on appeal. *Dawson v. Delaware,* —— U.S. ——, 111 S.Ct. 1412, 113 L.Ed.2d 465 (1992). *Compare Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**3.** Superior Court Criminal Rule 33, which permits defendants to move for a new trial, is identical to Federal Rule of Criminal Procedure 33. Federal case law interpreting Federal Rule 33 supports the proposition that a trial court's decision to grant or deny a motion for new trial will not be reversed absent abuse of discretion. *See, e.g., United States v. Seago,* 6th Cir., 930 F.2d 482, 488 (1991); *United States v. Kuzniar,* 7th Cir., 881 F.2d 466, 470 (1989).

cededly unintended playing.[4] As a general rule, a curative instruction is usually sufficient to remedy any prejudice which might result from inadmissible evidence admitted through oversight. *Edwards v. State*, Del. Supr., 320 A.2d 701, 703 (1974).[5] The trial court fully complied with *Edwards*. By issuing an instruction following the prosecutor's mistake instead of granting a mistrial, the Superior Court reasonably exercised its discretion and cured any prejudice which may have resulted.

■ On motion for new trial the court also correctly applied the *Hughes* three-part analysis by considering the following factors: 1) the centrality of the issue affected by the alleged error; 2) the closeness of the case; and 3) the steps taken to mitigate the effects of the alleged error. *Weddington*, 545 A.2d at 612 (citing *Hughes*, 437 A.2d at 571). The record supports the court's findings of no prejudicial error denying defendant a fair trial.

### III

We turn to the more difficult issue posed by the trial court's refusal to instruct the jury on a claim of right defense to the charge of attempted extortion. Zimmerman argues that this was error because he had established by a preponderance of the evidence that he had a right to be repaid the $1,200. Therefore, he was entitled, as a matter of law, to an instruction of "claim of right," as permitted by 11 *Del.C.* § 847(a).[6] Zimmerman also argues that

such a defense was available for him to assert even though he denied any responsibility for the assault.

The court declined defendant's request for an instruction of "claim of right" as permitted by 11 *Del.C.* § 847(a) for essentially two reasons. First, the court found that it would be inconsistent to permit Zimmerman to plead not guilty to extortion and alternatively assert that he performed the alleged conduct under a claim of right. In addition, the court concluded that the legislature had not intended Zimmerman's conduct of physical assault to fall within the codified claim of right affirmative defense to extortion.

The State counters that the trial court was legally correct in refusing to give the requested claim of right instruction. It reasons that the General Assembly did not intend section 847(a) to be available to a defendant who threatens physical harm or use of force to compel payment.

■ In addressing a question of statutory interpretation, our review is plenary, or *de novo*, "to determine 'whether the Superior Court erred as a matter of law in formulating or applying legal principles.'" *Moses v. Board of Education*, Del.Supr., 602 A.2d 61, 63 (1991) (quoting *Delaware Alcoholic Beverage Wholesalers, Inc. v. Ayers*, Del.Supr., 504 A.2d 1077, 1081 (1986)). We find Superior Court to have committed legal error in refusing defendant's requested jury instruction on the affirmative defense of claim of right after

---

4. The court instructed the jury as follows:

> Ladies and gentlemen, there is language that you may have heard already on the tape, words of a different kind to which you may take personal offense. The tape is being played as it is, and you must, in weighing and considering the evidence *and the shall we say*, inoffensive words on the tape, consider those words and not be—not allow yourselves to allow any concern that you might have with the offensiveness of one or more of the words on this tape to sway your decision making process.
>
> I'm deliberately *not* singling out any word or words, because I do not want to lend undue emphasis or to repeat any word or words that may be offensive to one or more or all of you. I'll instruct you to listen to the tape and to take what you've already heard

and what you will continue to hear and put aside, if you can, any offense which the language on the tape may create for you.

5. In *Edwards* we held that "even where error is committed, ordinarily it will be cured by the trial judge's striking of the offending testimony and admonition to the jury to disregard it". *Id.* at 703 (citations omitted).

6. In relevant part, 11 *Del.C.* § 847 provides:

> **§ 847. Theft, extortion; claim of right as an affirmative defense.**
>
> (a) In any prosecution for theft or extortion, it is an affirmative defense that the property was appropriated by the actor under a claim of right, made in good faith, to do substantially what he did in the manner in which it was done.

having found defendant to have established, by a preponderance of the evidence, a claim of right to the $1,200.[7]

■ Addressing first the threshold issue, we hold that a criminal defendant is entitled to assert an alternative defense, even if inconsistent. *See, e.g., Mathews v. United States*, 485 U.S. 58, 63–64, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988); *United States v. Demma*, 9th Cir., 523 F.2d 981, 984–5 n. 6 (1975); *Johnson v. United States*, D.C.Cir., 426 F.2d 651, 656 (1970) (citing *Whittaker v. United States*, D.C.Cir., 281 F.2d 631, 632 (1960)), *cert. dismissed*, 401 U.S. 846, 91 S.Ct. 1258, 28 L.Ed.2d 523 (1971); *People v. Hansma*, 84 Mich.App. 138, 269 N.W.2d 504, 507–08 (1978). "An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse or mitigate it...." *Halko v. State*, Del.Supr., 175 A.2d 42, 49 (1961). A claim of right defense is an affirmative defense. *See* 11 *Del.C.* § 847(a). Thus, even though Zimmerman denied committing extortion, he was entitled to argue in the alternative that, if the jury found that he did attempt extortion, he did so under a claim of right.

■ Extortion is defined in 11 *Del.C.* § 846,[8] and section 847 affords the affirmative defense of claim of right to a defendant in *any* prosecution for *extortion* or theft-related crime who establishes a claim of right. *See* 11 *Del.C.* § 847(a); *Bilinski v. State*, Del.Supr., 462 A.2d 409, 413 (1983); *Wright v. State*, Del.Supr., 405 A.2d 685, 689–90 (1979). To assert a statutory affirmative defense a defendant has the burden of establishing the defense by a preponderance of the evidence. *See* 11 *Del.C.* § 304(a). A defendant is entitled to have the jury instructed as to an asserted affirmative defense unless the trial court determines that no reasonable juror could find the defense to be established by defendant by a preponderance. *See* 11 *Del.C.* § 304(b).

Delaware precedent is well established, as noted above. In *Wright* we held that the General Assembly intended to permit a defendant to assert a claim of right defense to a charge of theft of electrical services by unlawfully reconnecting his electrical service after the electric company had discontinued it due to a billing dispute. *Wright*, 405 A.2d at 690. We found the defense available to Wright because he had allegedly acted in the belief that the service had been improperly terminated. *Id.* Later, in *Bilinski* we affirmed the Superior Court's application of the claim of right

---

**7.** In denying Zimmerman's request for a claim of right instruction, the Superior Court ruled:

[W]hen we are seeking affirmative defense to a charge of attempted extortion of the $1,200.00, it that's what we're talking about, then we're saying that tying in the testimony of this case to Title 11, Section 304 and Section[s] 846 and 847, that the—he has to show, by a preponderance of the evidence, that he had a claim of right, which I find was established here. There was an agreement here. The testimony is uncontradicted by Mr. Eric Frye that he agreed to repay the $1,200.00, but under these circumstances of being able to claim, as an affirmative defense, of "Pay me back my $1,200.00 or I'm going to cause you some physical harm," as an alternative to other means, is, I find, not within the intent of the exception created in 847(A), to a charge of extortion or even attempted extortion.

I find, under Section 304(b), you understand that no reasonable juror could find that there has been a preponderance of the evidence which the defense can bring out through cross-examination of the State's witnesses, that the affirmative defense is—burden has been met here. What I'm saying is

that I—while the defendant can meet its burden of proof of an affirmative defense by cross-examination of the State's witnesses, I find that that burden has not been met in this instance because of the requirements and elements of 847, as they relate to 846.

For those reasons, I decline to give the instruction.

**8.** In pertinent part, 11 *Del.C.* § 846 provides:

**§ 846. Extortion; class D felony.**

A person commits extortion when, with the intent prescribed in § 841 of this title, he compels or induces another person to deliver property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the defendant or another will:

(1) Cause physical injury to anyone; or

(2) Cause damage to property; or

(3) Engage in other conduct constituting a crime; or

\*      \*      \*      \*      \*      \*

(8) Perform any other act which is calculated to harm another person materially with respect to his health safety, business, calling, career, financial condition, reputation or personal relationships....

defense to a defendant charged with attempted extortion for threatening to bomb a bank and kill the people therein. The defense was there available based on Bilinski's asserted belief that the bank owed him money. *Bilinski*, 462 A.2d at 411 & 413–14.

The State urges us to overturn *Bilinski* and *Wright*, contending that our ·decisional law is contrary to the General Assembly's intent expressed in section 847(a). Its argument is constructed on a comparison of the Delaware statute to the Model· Penal Code. The Model Code favors a liberal approach to the availability of a claim of right defense.[9] From this, the State reasons that the General Assembly, by failing to adopt the Model Penal Code, must have rejected the liberal premises of the Model Code and not intended to extend the defense to a defendant who threatens or inflicts serious bodily harm. *See People v. Reid*, 69 N.Y.2d 469, 515 N.Y.S.2d 750, 508 N.E.2d 661 (1987). The State argues that the General Assembly must have intended to limit the availability of the claim of right defense to only those defendants who resort to "self-help," following threats of physical harm, only after making a good faith determination that self-help is lawful. Unfortunately, the State has failed to make any persuasive showing that the legislature, in enacting section 847, rejected the Model Penal Code's language and comments. The State also ignores the plain language of section 847 as applied by *Bilinski* and *Wright*.

Section 847(a) plainly provides that a defendant, acting under a good faith claim of right, may assert a claim of right defense in *"any* prosecution for ... *extortion...."* Giving the words of the statute their common, ordinary meaning, a defendant faced with *any* charge of extortion may assert the defense so long as the claim is based on a good faith claim to the property. Section 847(a) does not contain any exception, implicit or explicit, to the availability of the defense for extortion charges based on threats of serious physical injury. Our decision in *Bilinski* is in accordance with this construction of the statute and mandates reversal.

Here, the trial court found that Zimmerman had satisfied his burden of proof of establishing, by a preponderance of the evidence, a claim of right to the·$1,200. The court, in finding that the legislature did not "intend" section 847(a) to allow a defendant who threatens physical violence to invoke the claim of right defense, failed to follow *Bilinski*.

The court also failed to adhere to one of the principles of statutory construction— that plain and unambiguous legislative language precludes excursions into legislative intent. As we· recently stated in *Hudson Farms, Inc. v. McGrellis*, Del.Supr., 620 A.2d 215, 217 (1993):

> If there is no reasonable doubt as to the meaning of the words used, the statute is unambiguous and the Court's role is limited to an application of the literal meaning of the words. *The Stop & Shop Companies, Inc. v. Suzanne Quinlan Gonzales*, Del.Supr., 619 A.2d 896 (1992). In performing this analysis, the words in the statute are given their common, ordinary meaning. *Kofron v. Amoco Chemicals Corp.*, Del.Supr., 441 A.2d 226, 230 (1982).

Thus, we must find the trial court to have erred as a matter of law in refusing Zimmerman's request for an .affirmative defense instruction available under section 847(a). Therefore, we must reverse Zimmerman's conviction on the charge of at-

---

9. Section 223.1(3) of the Model Penal Code provides in pertinent part:

(3) *Claim of Right.* It is an affirmative defense to prosecution for theft that the actor:

(b) acted under an honest claim of right to the property or service involved or that he had a right to acquire or dispose of it as he did....

*Model Penal Code* § 223.1 (Official Draft and Revised Comments 1980). The comments describe the general principle of the claim of right defense as:

the actor should have a defense where, although he is not in a position to claim that the property belongs to him, he honestly believes that he is entitled to acquire it ·and that his privilege extends to the use of force or other unlawful method of acquisition.

*Id.* at 156.

tempted extortion and remand for a new trial on that charge alone.

By so ruling, we in no way condone Zimmerman's actions. We concur with the Superior Court and the State that a claim of right defense should not extend to a defendant who either threatens to cause serious bodily injury as means of collecting or recovering claimed property. Unfortunately, under the unambiguous language of section 847(a), we are obliged to reach a decision which is contrary to society's interests. Section 847(a) is a valid legislative act and, thus, its plain language must be adhered to by this Court. *See Williams v. West,* Del.Supr., 479 A.2d 1253, 1255 (1984); *Public Serv. Comm'n v. Wilmington Suburban Water Corp.,* Del.Supr., 467 A.2d 446, 451 (1983). Accordingly, we must leave to the General Assembly the task of amending section 847(a) to preclude use of the claim of right defense in the prosecution of extortion charges where it is found that a threat of serious bodily injury has been made.

\* \* \*

Affirmed in part, reversed in part and remanded for a new trial consistent with this decision.