IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TODD GREEN, | § | |
| | § | |
| Defendant-Below, | § | No. 540, 2015 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1406002733 |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: August 24, 2016
Decided: September 7, 2016

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## ORDER

This 7th day of September 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) A Superior Court jury convicted Todd Green of raping the thirteen year old daughter of his girlfriend, Theresa Ferrer ("Mother"). The jury convicted Green on the strength of physical evidence and testimony from witnesses, including the victim, Mother, victim's older sister, and the nurse who treated the victim on the night of the rape. The Superior Court sentenced Green to a mandatory prison term of fifty years and nine months.

(2) Green makes one argument on appeal. He contends that the cumulative effect of irrelevant and prejudicial testimony deprived him of a fair trial. After a careful review of the record on appeal, we find that the challenged testimony did not jeopardize Green's substantial rights or deprive him of a fair trial. We therefore affirm his convictions.

(3) Mother and her three daughters lived for a time in Connecticut, but moved to Mother's sister's house in Camden, Delaware due to conflict between Mother and Green. In February 2012, Mother and her daughters then moved to Kent Acres in Dover, Delaware. Green soon moved into the Kent Acres home. The five then moved to another home on Thames Drive in Dover. In August 2013, they again moved, this time to Stevens Street in Kent County just south of Dover. The victim and her older sister shared a bedroom in the Stevens Street home.

(4) On May 28, 2014, the victim stayed home from school because she did not feel well. That evening, Mother left the house at around 8 p.m. to go bowling. The victim's older sister was away from the house at work. After the youngest daughter went outside to play, the victim and Green were the only ones in the house. Green went into the victim's bedroom while she was sleeping and removed her clothes. Green then sexually assaulted the victim. When victim's older sister came home from work after missing calls from the victim, the victim

2

told her that Green raped her. Green had gone "out somewhere" and was not at the house when the victim's older sister returned.[1] The victim's older sister called 911.

(5) When a police officer arrived at the Stevens Street home around midnight, he spoke with the victim and collected the clothes she wore during the assault. Once Mother returned home, the officer accompanied Mother, the victim, and the victim's sisters to Kent General Hospital for a medical examination. Dawn Culp, a sexual assault nurse examiner, examined the victim. Culp swabbed the victim's chest for seminal fluid residue and noted abrasions in the victim's vagina. A DNA analysis of seminal fluid stains from the victim's clothes and the swab from her breast revealed a match with Green's DNA.

(6) On February 2, 2015, a grand jury indicted Green on fifteen counts of sexual assault. The indictment alleged that four counts occurred at the Kent Acres home, four counts occurred at the Thames Drive home, and the remaining seven counts occurred at the Stevens Street home.

(7) At Green's June 2015 trial, the victim, the Mother, victim's older sister, and Culp testified. The victim, who was fourteen at the time, testified that Green raped her on three separate occasions, once at each of their homes. The victim's older sister testified that when she returned from work the night of the May 2014 incident, the victim told her that Green raped her and that it was not the

---

[1] App. to Opening Br. at 4.

first time. Mother testified that after she came home from her bowling league, police were at the house. She also testified that she went to the hospital with her daughters where the victim was crying and did not want to talk about the incident. Culp testified that she performed an extensive examination of the victim. During her examination, she found abrasions in the victim's vagina and swabbed for DNA material. The DNA taken from the victim's clothes and breast matched Green's DNA.

(8)     As part of some background questions about Green's relationship with Mother, the victim's older sister testified that she had problems with Green because "he would hit [her] mom."[2] Green's counsel did not object. Mother also testified that she and her daughters moved from Connecticut to Delaware because she and Green had a fight while living in Connecticut and he threatened to kill them. Green's counsel objected and the court sustained the objection. Counsel did not request a curative instruction.

(9)     During Culp's testimony, in response to a question about whether the victim's complaints were consistent with the injuries she found, Culp responded that she believed what the victim told her about what occurred. Green's counsel objected to Culp's vouching for the credibility of the victim. The court sustained the objection and instructed the jury to disregard Culp's personal opinion

---

[2] *Id*. at 18.

testimony on the victim's credibility. After trial the jury found Green guilty of three of the fifteen counts of sexual assault. The court sentenced Green to a mandatory fifty year and nine month Level V sentence.

(10) Green argues on appeal that the cumulative effect of the statements made at trial by the Mother, victim's older sister, and Culp deprived him of a fair trial. Green contends first that the victim's older sister's statement about Green hitting her mother was unfairly prejudicial.[3] He argues that the sister's testimony was improperly used to show Green's bad character, and therefore should have been stricken.

(11) Counsel did not object to the testimony. When there is no objection to evidence, we review for plain error.[4] Error is plain when it is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[5] Plain errors are "limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show

---

[3] App. to Opening Br. at 18.
      Q: What was your relationship like with the defendant?
      A: We were okay at first.
      Q: And then what was your relationship after you were okay?
      A: We started having problems because I found out that he would hit my mom.
      Q: After you found that out, what happened in your relationship between you and the defendant?
      A: I didn't like him anymore.
[4] Supr. Ct. R. 8; *Wainwright*, 504 A.2d at 1100.
[5] *Wainwright*, 504 A.2d at 1100.

manifest injustice."[6]  "To be plain, the alleged error must affect substantial rights, generally meaning that it must have affected the outcome of [the] trial."[7]  The burden of demonstrating that the error was prejudicial is on the party claiming error.[8]

(12)  Green has failed to meet his heavy burden to show that allowing the unobjected-to testimony was such fundamental error that it jeopardized the fairness of the trial.  Although the testimony might have been stricken if there had been an objection, we find that the other admissible evidence of Green's guilt overcomes any prejudice from the older sister's isolated remark.  The victim testified that Green raped her at the Stevens Street home, her older sister and Mother testified about the events following the rape, and Culp testified convincingly about the results of her sexual assault examination of the victim.  Further, the DNA evidence recovered from the victim's clothes and her body matched Green's DNA.  With such overwhelming evidence of guilt, Green has failed to show that the admission of the older sister's statement would have affected the outcome of the trial.

(13)  Green argues next that Mother's statement—that she and her daughters moved from Connecticut to Delaware because Green threatened to kill them—was unfairly prejudicial because the court gave no curative instruction after

---

[6] *Id.*

[7] *Brown v. State*, 897 A.2d 748, 753 (Del. 2006) (citing to *United States v. Olano*, 507 U.S. 725, 734 (1993)).

[8] *Brown*, 897 A.2d at 753.

sustaining an objection.[9] Green argues that although his counsel objected to Mother's statement and the court sustained the objection, the court nonetheless erred because it did not on its own initiative give a curative instruction to prevent prejudice. Generally, whether to give a curative instruction is at the discretion of the trial judge, and we would review for abuse of discretion.[10] But it is incumbent on counsel to request a curative instruction, which he did not.[11] Because trial counsel did not make the request, we review for plain error.[12] A similar plain error analysis applies to this argument. After reviewing the record, we find that the isolated reference to threats that were allegedly made years before the rape was not so prejudicial as to undermine the fairness of Green's trial. Further, as we noted when reviewing the older sister's testimony, the overwhelming testimonial and physical evidence of his guilt outweighed any prejudice that might have occurred.

(14) Green also argues that Culp's statement at trial vouching for the credibility of the victim was unfairly prejudicial, impermissible, and warranted a

---

[9] App. to Opening Br. at 29:
> Q: Why did you move to Delaware?
> A: Well, we having a fight—I having a fight with him that time. And then he threatened my kids and me, that he's going to kill us; so I move. I move out.

[10] *Sammons v. Doctors for Emergency Servs., P.A.*, 913 A.2d 519, 539 (Del. 2006).

[11] 88 C.J.S. *Trial* § 157, Westlaw (updated 2016) ("When an error is made, it is incumbent upon opposing counsel to then and there voice an objection and, if sustained, move for appropriate relief."); 88 C.J.S. *Trial* § 216, Westlaw (updated 2016); *Sudler v. State*, 83 A.3d 738 (Del. 2013) (Table) (citing *Swan v. State*, 820 A.2d 342, 357 (Del. 2003)) ("The defense objected to the remark and the trial court sustained the objection. The prosecutor rephrased his comment, but the judge did not give a curative instruction. . . . [T]his error was not plain error because it was insufficient to overcome the extensive evidence of Swan's guilt.").

[12] *See Sudler v. State*, 83 A.3d 738 (Del. 2013) (Table); *see also Claudio v. State*, 585 A.2d 1278, 1281 (Del. 1991).

mistrial. Because Green's trial counsel did not request a mistrial, we review for plain error.

(15) A witness may not bolster or vouch for the credibility of another witness by testifying that the other witness is telling the truth.[13] Vouching "includes testimony that directly or indirectly provides an opinion on the veracity of a particular witness."[14] Culp's statement vouched for the credibility of the victim. But the Superior Court should grant a mistrial only where there is "manifest necessity" or the "ends of public justice would be otherwise defeated."[15] A mistrial is proper only when there are "no meaningful and practical alternatives" to remedy the matter.[16] Further, a prompt curative instruction can, under certain circumstances, mitigate the prejudice from inadmissible evidence.[17]

(16) Here, Culp's comment was an isolated occurrence. The Superior Court asked Green's attorney more than once what action she wanted the court to take.[18] Green's attorney did not ask for a mistrial, but instead asked that the statement be stricken from the record. The Superior Court complied and promptly

---

[13] *Richardson v. State*, 43 A.3d 906, 910 (Del. 2012) (quoting *Capano v. State*, 781 A.2d 556, 595 (Del. 2001)).

[14] *Id.*

[15] *Brown*, 897 A.2d at 752 (quoting *Fanning v. Superior Court*, 320 A.2d 343, 345 (Del. 1974)).

[16] *Dawson v. State*, 637 A.2d 57, 62 (Del. 1994) (quoting *Bailey v. State*, 521 A.2d 1069, 1077 (Del. 1987)).

[17] *Zimmerman v. State*, 628 A.2d 62, 66 (Del. 1993).

[18] App. to Opening Br. at 40.

instructed the jury to disregard Culp's statement.[19] Under the circumstances, where the court took the steps requested by counsel to mitigate any prejudice, and no request was made for a mistrial, the Superior Court did not plainly err by continuing with the trial.

(17) Green also argues that the cumulative effect of the bad character evidence from the Mother and victim's older sister, and the impermissible vouching from Culp, was prejudicial error that warrants reversal. Where several errors occur in the Superior Court, we weigh the cumulative effect to determine whether the errors were so "prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[20] The burden is on Green to demonstrate that the admission of prejudicial evidence amounted to plain error.[21]

(18) Green has not shown that the cumulative effect of the witnesses' statements deprived him of a fair trial or resulted in "manifest injustice."[22] As we have noted before, the statements were isolated events in the trial, the trial judge properly addressed evidentiary objections brought to his attention, and gave a

---

[19] App. to Opening Br. at 41.
    THE COURT: Ladies and Gentlemen, I'm going to instruct you at this stage to disregard the testimony regarding a personal opinion of the witness as to the credibility of the—of another individual in this case.
    You, as a jury, are the sole determiners of credibility. And you are to put no weight on the opinion of another person testifying as to whether someone is truthful or not; that is based on your assessment of credibility of the witnesses. So, given that, that answer will be stricken, and we'll continue with this case.
[20] *Starling v. State*, 130 A.3d at 336 (quoting *Wainwright*, 504 A.2d at 1100).
[21] *Brown*, 897 A.2d at 753.
[22] *Wainwright*, 504 A.2d at 1100.

curative instruction when requested. Any prejudicial effect of the testimony relied upon by Green is also far outweighed by the overwhelming evidence of his guilt. Thus, the Superior Court was not required to grant Green a new trial based on the evidentiary issues raised by Green.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is affirmed.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

10