# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                )
                                  )
            Plaintiff,            )
                                  )
                                  )
    v.                            )    Cr. ID. No.  1407011336
                                  )
                                  )
MARCUS ROSSER,                    )
                                  )
            Defendant.            )

Submitted:  August 21, 2018
Decided: November 26, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND RULE 61 COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED.

Sonia Augusthy, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Christopher S. Koyste, Esquire, Law Offices of Christopher S. Koyste, LLC, Attorney for Defendant Marcus Rosser.

PARKER, Commissioner

This 26th day of November, 2018, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

Defendant Marcus Rosser ("Rosser") was arrested on July 14, 2014 and later indicted on the following charges: one count of Assault First Degree, one count of Carrying a Concealed Deadly Weapon ("CCDW"), one count of Robbery First Degree, one count of Aggravated Possession of a Firearm by a Person Prohibited ("PFBPP"), two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), and two counts of Endangering the Welfare of a Child ("EWC"). Rosser was re-indicted on October 27, 2014, and the charges of Resisting Arrest and Offensive Touching of a Law Enforcement Officer were added.

In May 2015, following a four-day trial, a Superior Court jury convicted Rosser of one count of Assault First Degree, one count of Robbery in the First Degree, one count of CCDW, one count of PFBPP, and two counts of PFDCF.

A judgment of acquittal was entered on the charges of Offensive Touching of a Law Enforcement Officer, Resisting Arrest, and the two counts of EWC.

On August 21, 2015, Rosser was sentenced to a total period of forty years at Level V incarceration, suspended after serving eighteen years, for decreasing levels of supervision.

1

man with the gun robbed Buchanan of a pack of cigarettes,[9] which he appeared to have discarded as he drove away.[10] The police were notified. Later, in the early morning hours of July 14, 2014, the police showed Buchanan a photographic array. Buchanan identified Rosser as the man who robbed him at gunpoint.[11]

Shortly after the Buchanan robbery, the police conducted a motor vehicle stop of Rosser's SUV.[12] During the course of a search of the SUV, the police seized a revolver with one bullet missing.[13]

Both Maddrey and Buchanan testified at trial and identified Rosser as their assailant.[14] Rosser did not testify at trial.[15]

Rosser's four-day jury trial began on April 28, 2015. At trial, the parties stipulated that Rosser was a person prohibited.[16] Following the close of the State's case, Rosser moved for a judgment of acquittal on the charges of Resisting Arrest, Offensive Touching, Assault First Degree, and PFBPP.[17] The court granted the motion in part and entered a judgment of acquittal on the charges of Resisting Arrest and Offensive Touching. The court also entered a judgment of acquittal on the two counts of Endangering the Welfare of a Child, which was raised *sua sponte* by the court.[18] The motion was denied on the other charges.

---

[9] *Id.*
[10] April 30, 2015 Trial Transcript, at pgs. 17-19.
[11] *Rosser v. State,* 2016 WL 1436604 (Del.).
[12] *Id.*
[13] *Id.*
[14] *Rosser v. State,* 2016 WL 1436604, *1 (Del.).
[15] *Rosser v. State,* 2016 WL 1436604, *1 (Del.).
[16] April 30, 2015 Trial Transcript, at pg. 151.
[17] Superior Court Docket Nos. 56 & 57; April 30, 2015 Trial Transcript, at pgs. 156-175; Superior Court Docket No. 62.
[18] Superior Court Docket No. 62; May 4, 2015 Trial Transcript, at pg. 78.

On the final day of trial, May 4, 2015, the State notified the parties that it had received evidence of contact between Rosser's family and one of the jurors.[19] The State obtained Rosser's prison phone calls which illustrated the improper communication with the juror.[20] The juror was excused and the remainder of the jury was individually *voir dired* to ensure the issue was isolated to only the one juror.[21]

Thereafter, Rosser was convicted of Assault First Degree, Robbery First Degree, CCDW, PFBPP, and two counts of PFDCF. Rosser was sentenced on August 21, 2015 to a total Level V term of forty years, to be suspended after eighteen years for decreasing levels of supervision. The minimum mandatory Level V time was seventeen years. The court imposed an additional year beyond the minimum mandatory because of Rosser's actions during the trial which appeared to have been an attempt to tamper with a juror.[22]

### RULE 61 MOTION AND COUNSEL'S MOTION TO WITHDRAW

Rosser filed a timely *pro se* motion for postconviction relief and request for the appointment of counsel on January 3, 2017. The court granted Rosser's request for the appointment of counsel and Rule 61 counsel was appointed and given leave to amend Rosser's pro *se* motion.

On November 7, 2017, assigned counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(6). Superior Court Criminal Rule 61(e)(6) provides that:

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall

---

[19] May 4, 2015 Trial Transcript, at pgs. 3-4.
[20] May 4, 2015 Trial Transcript, at pgs. 9-13.
[21] May 4, 2015 Trial Transcript, at pgs. 12-45.
[22] August 21, 2015 Sentencing Transcript, at pg. 12.

4

explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.

In the motion to withdraw, Rosser's Rule 61 counsel represented that, after undertaking a thorough analysis of Rosser's claims, counsel has determined that the claims are so lacking in merit that counsel cannot ethically advocate any of them.[23] Rule 61 counsel further represented that, following a thorough review of the record, counsel was not aware of any other substantial claim for relief available to Rosser.[24] Rosser's Rule 61 counsel represented to the court that there are no potential meritorious grounds on which to base a Rule 61 motion and has therefore sought to withdraw as counsel.[25]

On November 7, 2017, Rosser's Rule 61 counsel advised Rosser of his motion to withdraw and advised that he had the right to file a response thereto within 30 days, if Rosser desired to do so.[26] Rosser did file a response in which he opposed counsel's motion to withdraw,[27] which he later supplemented.[28] A briefing schedule was entered and pursuant thereto trial counsel submitted an Affidavit in response to Rosser's Rule 61 motion,[29] Rosser supplemented his issues/points for consideration in his Rule 61 motion,[30] the State filed a response[31], and Rule 61 counsel filed a reply thereto.[32]

---

[23] See, Superior Court Docket Nos. 96, 97, 98- Defendant's Rule 61 counsel's Motion to Withdraw along with the accompanying Memorandum in Support of Motion to Withdraw and appendix.

[24] Superior Court Docket No. 96- Rule 61 Counsel's Memorandum in Support of Motion to Withdraw, at pg. 32.

[25] Id.

[26] See, Superior Court Docket No. 96- letter dated November 7, 2017 advising Rosser of the Motion to Withdraw.

[27] Superior Court Docket No. 100.

[28] Superior Court Docket Nos. 103 & 107.

[29] Superior Court Docket No. 102.

[30] Superior Court Docket No. 103 & 107.

[31] Superior Court Docket No. 104.

[32] Superior Court Docket No. 108.

On August 21, 2018, after briefing was fully completed, Rosser's Rule 61 motion was referred to the undersigned Commissioner to assist in deciding the pending motion.

In order to evaluate Rosser's Rule 61 motion and to determine whether his Rule 61 counsel's motion to withdraw should be granted, the court should be satisfied that Rule 61 counsel made a conscientious examination of the record and the law for claims that could arguably support Rosser's Rule 61 motion. In addition, the court should conduct its own review of the record in order to determine whether Rosser's Rule 61 motion is so totally devoid of any, at least, arguable postconviction claims.[33]

## DEFENDANT'S RULE 61 MOTION IS WITHOUT MERIT

Rosser raises a number of ineffective assistance of counsel claims in his Rule 61 motion. To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard of *Strickland v. Washington*.[34] This test requires that defendant prove that trial counsel's performance was (1) objectively unreasonable, and (2) that the defendant was prejudiced as a result.[35]

Under the first prong, judicial scrutiny is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[36] A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.[37]

---

[33] *Matos v. State*, 2015 WL 5719694, *2 (Del.).
[34] *Strickland v. Washington*, 466 U.S. 668 (1984).
[35] *Id.* at 694.
[36] *Id.* at 689.
[37] *Id.* at 690.

6

Under the second prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.[38] In other words, not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.[39] Some errors will have a pervasive effect and some will have had an isolated, trivial effect.[40] The movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[41] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[42] The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[43]

Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[44] Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[45] Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[46]

In *Harrington v. Richter*,[47] the United States Supreme Court explained the high bar that must be surmounted in establishing an ineffective assistance of counsel claim. In

---

[38] *Id.* at 693.
[39] *Id.* at 693.
[40] *Id.* at 695-96.
[41] *Dale v. State*, 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[42] *Id.*
[43] *Dale v. State*, 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington*, 466 U.S. 668, 695-696 (1984).
[44] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[45] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. 2008).
[46] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).
[47] *Harrington v. Richter*, 131 S.Ct. 770 (2011).

*Harrington*, the United States Supreme Court explained that representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial.[48] Counsel's representation must be judged by the most deferential of standards.[49]

With this backdrop in mind we turn to Rosser's specific claims of trial counsel's ineffectiveness.

### Claim I: Trial Counsel Was Ineffective for Failing to File a Motion to Sever the PFBPP Charge and for Stipulating that Rosser was a Person Prohibited

Rosser claims that trial counsel was ineffective for stipulating that he was a person prohibited from owning a firearm and for not filing a motion to sever the PFBPP charge.

The stipulation, as presented to the jury, read: "It is hereby stipulated and agreed to between the State of Delaware and the defendant, Marcus Rosser, that on or about July 13, 2014 Marcus Rosser was a person prohibited from possessing a firearm."[50] This stipulation was read to the jury immediately prior to the closing of the State's case.[51]

Rosser, personally, along with trial counsel, agreed to and signed the stipulation.[52]

In his Affidavit in response to Rosser's Rule 61 motion, trial counsel explains that his decision for stipulating that Rosser was a person prohibited was tactical as was his decision not to move to sever the PFBPP charge.[53] The decision was made to prevent the jury from discovering the nature of the defendant's prior conviction, as well as to

---

[48] *Id.* at * 791.
[49] *Id.* at *787-88.
[50] Superior Court Docket No. 54- Stipulation of Fact
[51] April 30, 2015 Trial Transcript, at pg. 151.
[52] Superior Court Docket No. 54- Stipulation of Fact
[53] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at *1-3.

8

"sanitize" the indictment. The stipulation contained no mention of the prior felony that rendered Rosser a person prohibited, nor did it reference any felony conviction at all. The stipulation was sanitized to avoid the jury from even knowing that Rosser had a prior felony conviction.[54]

In his Affidavit, trial counsel represents that he met with Rosser prior to jury selection, at which time they discussed the issue, and Rosser agreed to move forward with the stipulation.[55] Rosser's consent and agreement to the stipulation is further evidenced by his signature on the stipulation.[56]

By trial counsel making the strategic decision to stipulate to Rosser's person prohibited status, trial counsel prevented the State from introducing evidence of Rosser's criminal history. Had trial counsel not entered into the stipulation, the jury would have heard that Rosser was convicted of felony drug possession, Possession of a Narcotic Schedule II Controlled Substance Within 1,000 Feet of a School. The fact that Rosser was previously convicted of felony drug possession would not have been helpful to his defense in the subject action especially in light of the fact that he was facing charges stemming from a drug transaction. Because of trial counsel's actions, the jury was never informed of what felony Rosser committed that made him a person prohibited.

In *Johnson v. State,*[57] the Delaware Supreme Court found trial counsel's decision to stipulate to defendant's person prohibited status, without disclosing the reason, to be a

---

[54] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 3.
[55] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 3.
[56] Superior Court Docket No. 54- Stipulation of Fact
[57] 983 A.2d 904 (Del. 2009).

9

tactical decision made in an effort to avoid the jury learning about the nature of the prior conviction.[58]

Defense counsel must be given wide latitude in making tactical decisions.[59] There is a strong presumption that defense counsel's conduct constituted sound trial strategy.[60] In the subject action, trial counsel's decision to stipulate to Rosser's person prohibited status was a reasonable strategic decision. Rosser cannot demonstrate that trial counsel's decision to stipulate fell below an objective standard of reasonableness or that he was prejudiced by the stipulation.

In trial counsel's Affidavit in response to Rosser's Rule 61 motion, he further represents that the decision to enter into the stipulation and have all the charges tried together, rather than to seek to sever the PFBPP charge, evolved into a strategic position. As trial counsel explained in his Affidavit, Rosser's unusual demeanor led him to believe that Rosser was under the impression that Buchanan would not appear at trial and that Maddrey, who was incarcerated, would not be cooperative as a State witness.[61]

Based on this information, trial counsel believed it would be in Rosser's best interest to move forward on all the charges at the same time if the State's witnesses were not going to be cooperative, as this would deny the State multiple opportunities to secure witnesses and obtain a conviction.[62] Trial counsel wanted all claims presented together at one time, so as not to provide the State with another opportunity to prosecute Rosser on any of the charges.[63]

---

[58] *Johnson v. State,* 983 a.2d 904, 923 (Del. 2009).
[59] *Harrington v. Richter,* 131 S.Ct. 770, 788-789 (2011).
[60] *Strickland v. Washington,* 466 U.S. 668, 689 (1984); *Harrington v. Richter,* 131 S.Ct. 770 (2011).
[61] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 2-3.
[62] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at *3.
[63] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 1-3.

That the witnesses cooperated and this strategy was ultimately unsuccessful does not render trial counsel's tactical decision unreasonable. As trial counsel acknowledged, he discussed his trial strategy with Rosser, and Rosser agreed to move forward with the charge on the basis of their intended strategy.[64]

In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be reviewed from trial counsel's perspective at the time decisions were being made.[65] It is all too easy for a court, examining trial counsel's defense after it has proved unsuccessful to conclude that a particular act or omission of counsel was unreasonable.[66] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of hindsight. Second guessing or "Monday morning quarterbacking" should be avoided.[67]

Since Rosser's person prohibited status was an essential element of the offense for which he was charged, the State would have been required to introduce evidence of Rosser's prior felony that rendered him a person prohibited from possessing a fireman. The State would have been required to do so irrespective of whether or not Rosser chose to testify.

Rosser claims that the jury may have been unable to compartmentalize their judgment based on his prior criminal record unless the PFBPP charge was severed. Rosser overlooks the fact that, in his case, the jury was never presented with evidence of his prior criminal record, because he, along with trial counsel, had stipulated to his person prohibited status. The record does not support that Rosser was prejudiced by the joinder

---

[64] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 1-3.
[65] *Strickland*, 466 U.S. at 688-89.
[66] *Strickland*, 466 U.S. at 688-89.
[67] *Strickland*, 466 U.S. at 688-89.

of the offenses or that the jury could not compartmentalize its judgment of guilt or innocence.

There are countless ways to provide effective assistance in any given case.[68] Even the best criminal defense attorneys would not defend a particular client in the same way. Consequently, defense counsel must be given wide latitude in making tactical decisions.[69] Where, as here, the jury is not informed of the defendant's criminal history or the nature of the past felony conviction, and trial counsel strategically declined to request severance of the PFBPP charge, neither prong of *Strickland* is met. That the decision ultimately proved to be unsuccessful does not make it unreasonable. This claim is without merit.

### Claim II: Trial Counsel Was Ineffective for Failing to file a Motion to Sever the Robbery and Assault Cases

Rosser claims that trial counsel was ineffective for failing to file a motion to sever the robbery case in which Buchanan was the victim from the assault case in which Maddrey was the victim. Rosser raised this same claim, only not in the context of an ineffective assistance of counsel claim, on direct appeal.

On direct appeal, Rosser contended that he was unfairly prejudiced by the consolidation of the assault case and the robbery case. On direct appeal, the Delaware Supreme Court held that there was no plain error in the consolidation of these offenses for trial.[70] The Delaware Supreme Court reasoned that the charged offenses were

---

[68] *Harrington v. Richter*, 131 S.Ct. 770, 787-788 (2011).
[69] *Harrington v. Richter*, 131 S.Ct. 770, 788-789 (2011).
[70] *Rosser v. State*, 2016 WL 1436604, * 2 (Del.).

"connected together" under Superior Court Criminal Rule 8(a) because they happened close in time and close in location and involved interconnecting evidence.

The interconnecting evidence included Rosser's SUV and the same revolver that was used in both offenses. It also included the fact that police found the revolver during a search of Rosser's SUV which was conducted on the same evening as both crimes.[71] Moreover, both victims were able to positively identify Rosser when interviewed by the police and when testifying at trial.[72] Under the circumstances of this case, the Delaware Supreme Court found no merit to Rosser's suggestion that the Superior Court committed plain error in failing to order separate trials of the robbery and assault cases.[73]

On direct appeal, the Delaware Supreme Court would not consider Rosser's claim that trial counsel was ineffective for not requesting that the charges be severed.[74] In his Rule 61 motion, Rosser now raises this claim that trial counsel was ineffective for not filing a motion to sever these cases.

In response to this ineffective assistance of counsel claim, trial counsel represents that he did not file a motion to sever the cases because he believed that such a motion did not have merit as the facts and evidence were inextricably intertwined.[75] In both incidents, the victims gave the police similar descriptions of the suspect, vehicle and gun used by the assailant. Shortly after the Buchanan armed robbery, Rosser was apprehended during a motor vehicle stop. The police recovered a revolver from Rosser's vehicle. The motor vehicle stop was in the same apartment complex where Maddrey was shot. The revolver recovered from Rosser's vehicle had one spent casing within the

---

[71] *Rosser v. State,* 2016 WL 1436604, *2 (Del.).
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at *2.

chamber. The victims, Maddrey and Buchanan, both positively identified Rosser as the perpetrator of the alleged crimes. Trial counsel cannot be deemed ineffective for failing to file a motion or raise an issue which has no legal or factual basis.[76]

Trial counsel further represents that he believed it would be in Rosser's best interest to move forward on all the charges at the same time given his belief that there was a possibility that the State's witnesses were not going to be cooperative.[77] If charges were severed, it would give the State an opportunity to issue a material witness warrant for the complaining witnesses, to secure witnesses and obtain a conviction.[78] For these reasons, trial counsel determined, in agreement with Rosser, that the defense strategy was to go forward with one trial.

Defense counsel must be given wide latitude in making tactical decisions.[79] There is a strong presumption that counsel's conduct was reasonable and constituted sound trial strategy.[80] The United States Supreme Court cautioned that reviewing courts must be mindful of the fact that unlike a later reviewing court, the trial attorney observed the relevant proceedings, knew of materials outside the record, and interacted with his client, with opposing counsel, and with the trial judge.[81]

Rosser has failed to establish that his trial counsel was deficient for not seeking to sever the robbery case from the assault case or that he suffered actual prejudice as a result thereof. This claim is without merit.

---

[76] *State v. Exum*, 2002 WL 100576, at *2 (Del. Super.), *affirmed*, 2002 WL 2017230, at *1 (Del.).
[77] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at *3.
[78] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at *3.
[79] *Harrington v. Richter*, 131 S.Ct. 770, 788-789 (2011).
[80] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998); *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Harrington v. Richter*, 131 S.Ct. 770 (2011).
[81] *Harrington v. Richter*, 131 S.Ct. 770, 787-788 (2011).

## Claim III: Trial Counsel Was Ineffective for Failing to Investigate Witnesses

Rosser claims that trial counsel was ineffective for failing to investigate the case and locate and interview defense witnesses. In Rosser's various submissions, he contended that certain individuals should have been interviewed but were not.

In his Affidavit in response thereto, trial counsel represents that the defense was premised on two theories: identity and the State's inability to prove guilt beyond a reasonable doubt.[82] Trial counsel does not recall Rosser suggesting he had alibi witnesses nor does he recall being provided with the names of any potentially exculpatory witnesses.[83] Trial counsel cannot be ineffective for failing to investigate alibi or exculpatory witnesses whose names were never provided to him.

One of the individuals that Rosser claims trial counsel should have located and interviewed was a Mr. "Nas". Rosser claims that Mr. "Nas" was a witness to the incidents and could have corroborated Rosser's version of the events. Rule 61 counsel hired a private investigator to interview Mr. "Nas" and determined that Mr. "Nas" was unable to provide information favorable to the defense.[84] Assuming that Rosser even provided the identity of "Nas" to trial counsel, Rosser cannot satisfy the second prong of *Strickland* and establish that he suffered actual prejudice as a result of trial counsel's failure to investigate or subpoena him for trial.

Rosser contends that if Mr. Nas had been called to testify he would have at least corroborated some of Rosser's version of events.[85] Rosser claims that Mr. Nas would have established that Rosser had an argument with Mr. Nas at the convenience store and

---

[82] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 3-4.
[83] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 4.
[84] Superior Court Docket No. 108- Rule 61 Counsel's Reply, at pg. 9.
[85] Superior Court Docket No. 107, Rosser's Responsive Brief, at pg. 7

15

that Rosser left the scene.[86] It is hard to see how this testimony would have been particularly helpful to Rosser. The facts presented at trial were that Maddrey agreed at the convenience to sell Rosser marijuana at a different location and that Rosser left the convenience store. Rule 61 counsel, after Mr. Nas was interviewed, has concluded that having Mr. Nas testify at trial would not have been helpful to the defense. Rosser has not established that counsel was ineffective for not calling Mr. Nas at trial, or that he suffered actual prejudice as a result thereof.

In addition, Rosser claims that trial counsel failed to interview State witness Cheyenne Spencer, who was a witness to the robbery of Buchanan. At trial, Ms. Spencer testified that she was with Buchanan during the alleged robbery.[87] She was unable to identify the individual she saw that night, and testified that she did not know him, only heard him tell Buchanan "to come here" and nothing more, was unable to provide a clear description of the vehicle involved, noted that Buchanan was "getting smart" with the individual, and was barely able to see the individual's face. She did not know Rosser.[88] Although Spencer testified that she saw the man "run" Buchanan's pockets, she did not indicate having witnessed anything being taken from Buchanan or seeing a gun.[89]

Immediately following direct examination, trial counsel informed the court that it was the first time he heard of this witness and although she did not have anything that would be considered *Brady* material, he would be asking for *Jenks* material.[90] Following a review of the *Jenks* material, trial counsel decided not to cross-examine the witness.[91]

---

[86] *Id.*
[87] April 29, 2015 Trial Transcript, at pgs. 184-200.
[88] April 29, 2015 Trial Transcript, at pgs. 184-200.
[89] April 29, 2015 Trial Transcript, at pgs. 184-200.
[90] April 29, 2015 Trial Transcript, at pgs. 196-200.
[91] April 29, 2015 Trial Transcript, at pgs. 199-200.

Trial counsel had not known of Spencer prior to trial. Trial counsel appropriately requested *Jenks* material before proceeding with cross-examination. Spencer's testimony was helpful to Rosser, in that she was unable to identify him or his vehicle, testified that Buchanan was provoking him, and did not allege to have seen a gun or anything taken from Buchanan. Rosser has failed to substantiate this claim of ineffective assistance. Rosser does not state what information would have been obtained during cross-examination or during a pre-trial interview that would have been added anything additional that would have been beneficial to him. Rosser has not established that his trial counsel's conduct was deficient or that he suffered actual prejudice as a result thereof.

Rosser next claims that trial counsel failed to interview Frank Walls, a witness to the robbery of Buchanan. Walls was listed in the police report as having witnessed the robbery. He was not called by the State at trial. Walls did not testify at trial and there was nothing in the record to support an inference that his potential testimony would have differed from Ms. Spencer. In fact, the police officer on the scene at the night of the incident noted that Walls' "account of the events and description was similar to" Buchanan's statement.[92] The record offers no reason why trial counsel should have believed Walls would have been able to provide anything helpful, and not harmful, to his defense. Rosser has not shown deficient conduct or actual prejudice.

Rosser contends that trial counsel was ineffective for waiting until trial to obtain Leroy Boyd's contact information to interview him as a potential defense witness. Boyd had been subpoenaed to appear at trial by the State and failed to appear.

---

[92] Superior Court Docket No. 97- Rule 61 Counsel's Appendix to Motion to Withdraw, at A16.

Apparently, both Leroy Boyd and another witness, Troy Bordley, were in the vehicle with Maddrey as he was being driven to the hospital after he had been shot. Troy Bordley testified that on the way to the hospital Maddrey said that Rosser ("Markie") shot him. Apparently, however, the driver of the vehicle, Leroy Boyd, did not hear any such statement(s). When the State called Troy Bordley as its next witness, trial counsel put the discrepancy between Bordley's testimony and Leroy Boyd's on the record, and asked the State to provide Leroy Boyd's contact information so that an investigator could go speak with him.[93]

The trial court confirmed that Leroy Boyd had been subpoenaed by the State, and ordered the State to provide his contact information to the defense.[94]

The record reflects that trial counsel was under the impression that Boyd would be attending the trial because he had been subpoenaed by the State. Thus, trial counsel would have had an opportunity to impeach Boyd with his prior statements, in the event that he changed his story while testifying. In the event that his testimony was consistent with his prior statements, his testimony would have been favorable to Rosser's defense, as it would have conflicted with Mr. Bordley's testimony. Accordingly, trial counsel was not deficient for not speaking with Mr. Boyd prior to trial, as trial counsel already had the necessary information to either impeach Boyd should his testimony change at trial or obtain favorable testimony from him if it did not.

Trial counsel had the ability to cross-examine all witnesses who testified on behalf of the State. There was no reason to believe that a witness who ignored a

[93] April 29, 2015 Trial Transcript, at pgs. 121-124.
[94] April 29, 2015 Trial Transcript, at pgs. 121-124.

subpoena from the State would have appeared had the subpoena been instead issued by the defense.

Once it became clear that Boyd had not shown up at trial, despite the subpoena, trial counsel acted reasonably in acquiring his contact information to have a private investigator speak with him. During the court's colloquy with Rosser regarding his right to testify, the court noted that counsel was still trying to determine whether certain witnesses were available and, if available, whether it was in Rosser's best interest to call those witnesses.[95] The court advised Rosser that they would again discuss his waiver of his right to testify in the event that the defense strategy changes "depending on who is available or what is available."[96]

Thus, the record reveals that trial counsel followed up on the possibility of calling Mr. Boyd as a witness and was weighing the strategic benefit in calling him or not calling him to testify. Accordingly, the record supports that it was a strategic decision for trial counsel not to be call Mr. Boyd as a defense witness.

Trial counsel made strategic decisions as to which witnesses to call or not call and which to cross-examine or not cross-examine, based upon the information that was available to him, the circumstances of the case, and whether those witnesses could provide testimony helpful or damaging to Rosser's defense. Trial counsel's conduct was not deficient and Rosser was not prejudiced by trial counsel's performance.

Rosser has not established that counsel's conduct was deficient or that he suffered any actual prejudice thereof. This claim is without merit.

---

[95] April 30, 2015 Trial Transcript, at pgs. 174-178.
[96] April 30, 2015 Trial Transcript, at pgs. 174-178.

19

## Claim IV:  Due to Trial Counsel's Ineffectiveness Defendant Was Prevented from Asserting a Claim of Self-Defense

Rosser claims that counsel was ineffective for not seeking to sever the robbery charges from the assault charge, because he wanted to testify about the assault charges and not about the robbery charges.  Rosser claims that the failure not to seek severance of the robbery charges from the assault charges stemmed from trial counsel's failure to investigate the case, which ultimately prevented him from raising a self-defense claim.

As discussed in Claim II, counsel believed that a motion to sever the robbery charges from the assault charges would be unsuccessful since the two sets of charges were inextricably intertwined.  He also determined that for tactical purposes all the charges should be presented in one trial at the same time.

In his Affidavit in response to Rosser's Rule 61 motion, trial counsel further represents that the evidence did not support a self-defense claim for the assault charges justifying the use of deadly force against Maddrey.[97]  First, Rosser never admitted to shooting Maddrey.  Second, there was no evidence that Maddrey was in possession of any type of weapon when he was shot, or that he was the aggressor in the confrontation.[98]  A self-defense claim would not have been available to Rosser.  Even assuming that a motion to sever the robbery case from the assault case was filed and granted, and Rosser pursued two separate defense strategies and admitted to shooting Maddrey in self-defense, he is unable to demonstrate a reasonable probability of a different outcome.

Other than offering his own anticipated testimony, Rosser has not identified any evidence that would support a self-defense claim or any witness able to corroborate that

---

[97] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 4.
[98] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 4.

20

Maddrey possessed a weapon or was otherwise an aggressor in the confrontation that would justify the use of deadly force. Based on his assessment of the evidence, trial counsel did not believe a self-defense strategy had any merit.

Moreover, the record reflects that Rosser never once indicated any desire to testify to trial counsel. The court engaged in a colloquy with Rosser about his right to testify and he responded that he would not testify.[99] Rosser represented to the court that it was his decision and his decision alone and that no one else could make that decision for him.[100] Rosser represented to the court that he discussed both options with trial counsel and that it was his decision not to testify.[101] The record is clear that Rosser exercised his right to not testify and he did not raise any concerns with the court that trial counsel was impeding his ability to choose.

Although Rosser asserts that he was unable to testify unless the cases were severed, the scope of the State's cross-examination would have been limited to issues raised during direct examination. As such, he would not have needed to testify regarding the robbery case unless the door was opened by the defense.

In light of Rosser's colloquy asserting that he did not wish to testify, the unlikely success of a motion for severance, and trial counsel's assertions that he did not believe a severance motion had merit and that it would have conflicted with their chosen defense strategy, Rosser's claim is without merit. Rosser has not demonstrated that the defense strategy chosen by trial counsel was deficient in any respect or that he suffered actual prejudice as a result thereof.

---

[99] April 30, 2015 Trial Transcript, at pgs. 175-178.
[100] *Id.*
[101] *Id.*

## Claim V: Trial Counsel Was Ineffective for Failing to Request a Missing Evidence Instruction

Initially, Rosser claimed that the court erred for not given a missing evidence instruction based on the fact that the stolen pack of cigarettes taken from Buchanan had not been collected as evidence. This claim would be procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3), since it was not previously asserted in the proceedings leading to the judgment of conviction.

In subsequent submissions, Rosser re-couched this claim as an ineffective assistance of counsel claim and contended that trial counsel was ineffective for failing to request a missing evidence instruction based on the fact that the stolen pack of cigarettes taken from Buchanan had not been collected as evidence. Ineffective assistance of counsel claims are not procedurally barred because a Rule 61 motion is the appropriate vehicle for raising such claims.[102]

The pack of cigarettes allegedly stolen from Buchanan was never recovered by law enforcement and therefore never in the custody of the State to be lost or destroyed.[103] Buchanan claimed that Rosser threw the stolen cigarettes out of his car window when he fled from the crime scene. Buchanan claimed that he saw the cigarettes in the roadway, however, the police never collected them as evidence.

Trial counsel states that the failure to collect the pack of cigarettes only evidenced "a shoddy police investigation", but not that the State lost or destroyed any evidence, and

---

[102] See, *Malin v. State*, 2009 WL 537060, at *5 (Del.Super.); *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).
[103] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at * 5.

he did not believe this fact pattern warranted a missing evidence instruction, so he did not request one.[104]

Had trial counsel believed a missing evidence instruction pursuant to *Deberry v. State*[105] and *Lolly v. State*[106] was warranted, to be successful, he would have needed to prove that the material was subject to disclosure under Superior Court Criminal Rule 16 or *Brady v. Maryland* and that the government had a duty to preserve the material.[107] In evaluating a missing evidence claim following conviction, the court must consider the degree of negligence or bad faith involved, the importance of the lost evidence and the sufficiency of the other evidence adduced at trial to sustain the conviction.[108]

In the subject action, trial counsel did not recall Rosser ever raising the issue with him, but even if he had, trial counsel does not believe that he would have requested a missing evidence instruction, as he had no reason to believe that the cigarettes would have been beneficial to Rosser's defense, they were never in the State's custody to be destroyed or lost, and the case against Rosser was overwhelming.[109]

Whether or not law enforcement was negligent in not collecting the pack of cigarettes is ultimately immaterial, as there is no reason to believe that the State's collection of the cigarettes would have been beneficial to Rosser or had any impact on the outcome of the trial.

Rosser claims that the "cigarettes were central and important in establishing the element of the crime," without which there could be no conviction. Rosser appears to be

---

[104] Superior Court Docket No. 102-January 3, 2018 Affidavit of Trial Counsel, at *5.
[105] 457 A.2d 744 (Del. 1983).
[106] 611 A.2d 956 (Del. 1992).
[107] *Deberry*, 457 A.2d at 750; *Lolly*, 611 A.2d at 961.
[108] *Deberry*, 457 a.2d at 752.
[109] Superior Court Docket No. 96- Rule 61 Counsel's Motion to Withdraw, at pg. 27-28.

under the mistaken impression that if he was not in possession of the cigarettes, the State could not establish that a theft was committed. Rosser does not seem to understand that it was the taking of the pack of cigarettes that constitutes the crime of theft, a requisite to establishing robbery.[110]

Buchanan testified that the cigarettes were taken and then discarded almost immediately thereafter. Because it is the act of taking the cigarettes that constituted the crime, the fact that they were still at the scene, assuming law enforcement had found and collected them, had no impact on the State's case against Rosser.

If the cigarettes had been located and collected at the scene, it would not have diminished the evidence of theft that was presented to the jury or undermined Buchanan's testimony.. It would only have corroborated Buchanan's testimony that he believed Rosser discarded the cigarettes while driving away from the scene.

The record does not reveal whether law enforcement was even aware that the pack of cigarettes was at the scene. It is not established that it was negligent on the part of both law enforcement or the State to not preserve the evidence. However, regardless of whether the cigarettes were in a location that made it negligent for law enforcement to not collect them, Rosser has not established that the collection of the pack of cigarettes would have been beneficial to his case or that the outcome of the trial was affected in any way by the failure to collect it.

Even if the cigarettes had been recovered by the State, there is no reasonable likelihood that it would have been standard law enforcement protocol to conduct fingerprint and/or DNA testing on the cigarette packaging, that the material would have been conducive to such types of testing, that the results would have been favorable to

---

[110] 11 *Del. C.* §§ 832 and 831.

24

Rosser, or that the State would have even believed testing to be necessary and requested it. Assuming the packaging of the cigarettes could have and would have been tested, and the results did not produce fingerprints or DNA that could be matched to Rosser, those results would not necessarily amount to exculpatory evidence. There are any number of possibilities outside of factual innocence as to why no match would be made, such as insufficient amounts of DNA recovered, the lifting of only partial fingerprints, or material not able to easily capture and preserve DNA or fingerprints.

The record does not support that the missing evidence was central to the case, was important to establishing the elements of the crime or had an effect on the jury's decision to convict.[111] No prejudice from the missing evidence can be demonstrated. This claim is without merit.

**Claim VI: There Was Insufficient Evidence to Sustain the Conviction.**

Rosser claims that there was insufficient evidence to support his convictions. After reviewing the record, the Delaware Supreme Court on direct appeal already held that the State presented sufficient evidence to meet its burden of proving each charge beyond a reasonable doubt. This claim was already raised, considered, and rejected by the Delaware Supreme Court on direct appeal.[112]

This issue having already been fully adjudicated is now procedurally barred.[113] Rosser concedes that this claim is procedurally barred under Rule 61(i)(4) as a formerly

---

[111] See, *Deberry*, 457 A.2d at 752-753(when analyzing prejudice, the court should consider, among other things, the centrality of the evidence to the case and its importance in establishing the elements of the crime).
[112] *Rosser v. State,* 2016 WL 1436604, *4 (Del.).
[113] Superior Court Criminal Rule 61(i)(4).

adjudicated claim and that it lacks merit.[114]  Rosser appears to have withdrawn and/or waived this claim.[115]

### Claim VII: This Court Should Consider Cumulative Prejudice.

Rosser claims that he was prejudiced by trial counsel's cumulative errors.  When there are several errors in a trial, a reviewing court must weigh the cumulative impact of the errors to determine whether the defendant was deprived of his right to a fair trial.[116] Here, because Rosser's individual claims of error are without merit, this form of relief is not available to him.  Rosser was not deprived of his right to a fair trial on the basis of cumulative error.

### EVIDENTIARY HEARING IS DENIED.

Rosser's request for an evidentiary hearing is denied.  Following a full, comprehensive and thorough review of the evidentiary record, Rosser's claims were either reasonably discounted as not supported by the record or not material to a determination of Rosser's claims.  It does not appear that an evidentiary hearing will aid in the resolution of this motion and is denied.

### CONCLUSION

Rosser has failed to establish that his trial counsel was deficient in any regard or that he suffered actual prejudice as a result thereof.  The court has reviewed the record carefully and has concluded that Rosser's Rule 61 motion is without merit and devoid of any other substantial claims for relief.  The court is also satisfied that Rosser's Rule 61

---

[114] Opposition Motion, pgs. 7, 14.
[115] See, Superior Court Docket No. 100, Rosser's Motion in Opposition of Counsel's Motion to Withdraw, pg. 14.
[116] *Wright v. State,* 405 A.2d 685, 690 (Del. 1979).

counsel made a conscientious effort to examine the record and the law and has properly determined that Rosser does not have a meritorious claim to be raised in his Rule 61 motion.

For all of the foregoing reasons, Rosser's Motion for Postconviction Relief should be denied and Rule 61 counsel's motion to withdraw should be granted.

**IT IS SO RECOMMENDED.**

Commissioner Lynne M. Parker

oc: Prothonotary
cc: Peter W. Veith, Esquire
Mr. Marcus Rosser