IN THE SUPREME COURT OF THE STATE OF DELAWARE

ANTHONY NASTATOS,           §
                            §    No. 217, 2019
   Defendant Below,    §
   Appellant,           §
                            §    Court Below: Superior Court
   v.                   §    of the State of Delaware
                            §
STATE OF DELAWARE,          §
                            §    Cr. ID No. 1102018112 (N)
   Plaintiff Below,     §
   Appellee.            §

Submitted: November 6, 2019
Decided:   December 20, 2019

Before **SEITZ**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

## ORDER

This 20th day of December, 2019, having considered the briefs and the record below, it appears to the Court that:

(1)    Anthony Nastatos met Alexandra Koval in 2009. Over the following years, Nastatos sought to express his affection for Koval and repeatedly messaged Koval despite her wish for him to stop. Even after two no-contact orders and while incarcerated, Nastatos continued to write to Koval. The State brought charges, and the evidence at trial against Nastatos was overwhelming. The jury convicted him of Harassment, three felony counts of Breach of Conditions of Bond During Commitment, and sixteen counts of Non–Compliance with Bond Conditions. The

judge sentenced him to thirty-two years, suspended after sixteen years. Nastatos appealed the sentence, which this Court affirmed in 2014.[1] Nastatos sought postconviction relief, which the Superior Court denied after an evidentiary hearing. Nastatos appeals the denial of every claim in his postconviction relief motion. For the reasons set forth below, we affirm.

(2) Nastatos and Koval met at work in August 2009 and developed a friendly relationship.[2] Soon after they met, Nastatos anonymously covered Koval's car with flower petals. He later admitted to the act and told her he had romantic feelings for her. Koval told Nastatos she did not have romantic feelings for him. A few days later, they went shopping together, had dinner at a restaurant, and met another co-worker for drinks. Nastatos' behavior that night made Koval uncomfortable. Koval's discomfort forced her to cancel other plans they had made together. After that, she avoided Nastatos.

(3) Over the following months, Nastatos repeatedly attempted contact with Koval by regularly sending lengthy love poetry via text messages; waiting for her after work; friending her on Facebook from accounts under his name and a pseudonym; and sending private messages over Facebook. After Koval shared with

---

[1] *Nastatos v. State*, 91 A.3d 562, 2014 WL 1512887 (Del. Apr. 15, 2014) (TABLE).
[2] Pretrial facts are taken from this Court's order in *id.* at *1-3.

2

her co-worker and manager a particular text from him, the manager transferred Nastatos to another location.

(4) Around this time, Koval made her first report to the New Castle County Police Department. The NCCPD told Koval to block Nastatos' cell phone number, which she did. Nastatos continued to regularly contact her through Facebook.[3] Koval again contacted the NCCPD. The police visited Nastatos, who claimed he and Koval were dating. The police advised Nastatos to stay away from Koval. After Nastatos persisted in sending her messages, the NCCPD arrested Nastatos. The Justice of the Peace Court placed bail conditions on Nastatos to have no more direct or indirect contact with Koval.

(5) Nastatos continued to regularly send Koval Facebook messages and even messaged Koval's father. Nastatos eventually arrived at the restaurant that was Koval's primary place of employment and attempted to speak with Koval. Koval ran to her car. As she was fleeing, Nastatos threw a ring box at her. Koval contacted the NCCPD. Nastatos sent Koval more Facebook messages. After Koval contacted the NCCPD, they arrested Nastatos for additional charges. The Justice of the Peace Court issued a second no-contact order.

---

[3] *See also id.* at *2 ("In various messages, Nastatos called Koval his 'wife' and 'soul sister.' He also referenced Koval contacting the police, a necklace he had given Koval, and mutual friends and co-workers. Nastatos asserted his belief that the restaurant management was conspiring against him. In one message, Nastatos said, 'I love you like I've never loved another person, but I can only do so much, especially when you are working against me.' Nastatos also referenced a desire to 'challenge' anyone for Koval's 'hand.'").

3

(6) Over the next eight months, while incarcerated, Nastatos sent Koval three letters. For each letter the police charged Nastatos with one count of felony Breach of Conditions of Bond During Commitment. He was also charged with Stalking and one count of misdemeanor Non–Compliance with Bond Conditions for each of the Facebook messages he sent to Koval after the court entered the bond condition.

(7) At first, Nastatos was found incompetent to stand trial due to mental illness. But, after treatment at a separate facility, Nastatos' competency was found restored. Upon returning to the custody of Delaware Department of Corrections, Nastatos stopped taking his medications and was again found incompetent. He returned to the facility for further treatment and eventually agreed to cooperate with the program. In August 2012, Nastatos was declared competent to stand trial.

(8) In December 2012, Nastatos' case proceeded to trial. During trial, Nastatos' counsel objected to the admission of thirty-eight emails, Facebook messages, and letters sent by Nastatos for the failure to properly authenticate them. The court conditionally admitted all thirty eight, but later decided to exclude six and instructed the jury not to consider the six rejected messages.

(9) On direct examination, trial counsel objected to Koval's testimony that she received messages from Nastatos. The court instructed the State to lead Koval so that Koval's testimony attributed the messages to him. After further errors, the

4

court removed the jury and instructed the witness on how to testify. The jury found Nastatos guilty of Harassment as a lesser-included offense of Stalking, three felony counts of Breach of Conditions of Bond During Commitment, and sixteen counts of Non–Compliance with Bond Conditions.

(10) Later, prior to the start of sentencing, trial counsel raised a concern about a conversation during a chambers conference, either before or during trial, in which the court allegedly made negative comments about Nastatos. Trial counsel expressed that he was not moving to recuse the judge, but just stating it for the record. The court sentenced Nastatos to thirty-two years' incarceration, suspended after sixteen years.

(11) Nastatos appealed whether the court sentenced him with a closed mind and in reliance on impermissible and erroneous facts, which resulted in the imposition of cruel and unusual punishment.[4] This Court affirmed the Superior Court's sentencing on April 15, 2014.[5] Within one year, Nastatos filed a *pro se* Rule 61 motion for postconviction relief and then an Amended Motion for Postconviction Relief in September 2016 seeking nine claims for relief. Nastatos' trial counsel and appellate counsel submitted affidavits. Nastatos requested access to Koval's cell

---

[4] The original appeal also contained a second issue. *Id.* at *1. But, appellant's counsel voluntarily withdrew that argument after it was rejected in another case by this Court. *Id.*
[5] *Id.*

5

phone records, which the Superior Court denied for failure to show cause. After an evidentiary hearing and the submission of written closing arguments, the Superior Court denied all postconviction claims.

(12) This Court reviews the denial of a motion for postconviction relief for an abuse of discretion and questions of law *de novo*.[6] On appeal, Nastatos groups his nine claims for postconviction relief into four categories to better align with the Superior Court's opinion. He argues that the Superior Court erred when it denied (1) his ineffective assistance of trial counsel claims because it did not properly evaluate the mistakes, (2) access to Koval's phone records because it violated his due process rights, (3) his ineffective assistance of appellate counsel claims because counsel's mistakes were "objectively unreasonable," and (4) a new sentencing hearing because it misunderstood his argument.

(13) We first address, however, the procedural bars in Rule 61(i) and apply the version in effect at the time the original motion was filed.[7] Nastatos filed a motion for postconviction relief in April 2015, when the June 2014 version was in effect. A motion for postconviction relief is barred by Rule 61(i)(1) if filed more than one year after the final conviction; by Rule 61(i)(2) if not asserted in a prior postconviction relief motion, if applicable; by Rule 61(i)(3) if procedurally

---

[6] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[7] Super. Ct. Crim. R. 61(i); *Bradley v. State*, 135 A.3d 748, 757 (Del. 2016).

defaulted; and by Rule 61(i)(4) if formerly adjudicated.[8] Rule 61(i)(5) provides an exception to the first four procedural bars if the motion claims that the court lacked jurisdiction, if the movant pleads with particularity that new evidence exists that strongly infers the movant's innocence, or the movant pleads with particularity that a new rule of constitutional law applies and renders the conviction invalid.[9]

(14) The Superior Court found that most of Nastatos' claims were not procedurally barred—it was his first motion for postconviction relief and it was timely filed.[10] Eight claims assert ineffective assistance of counsel, which are properly raised for the first time in a motion for postconviction relief.[11] But the remaining claim, alleging a *Brady* violation, is procedurally barred under Rule 61(i)(3).[12] Thus, the Superior Court properly determined that his claims, except the *Brady* claim, were not procedurally barred.

(15) On appeal, Nastatos first argues that the Superior Court erred when it denied his postconviction claim of ineffective assistance of trial counsel. Nastatos' Amended Motion for Postconviction Relief alleged six separate claims, arguing that trial counsel was ineffective for failing: 1) to limit prior bad act and mental health

---

[8] Super. Ct. Crim. R. 61(i)(1)-(4).
[9] Super. Ct. Crim. R. 61(i)(5); Super. Ct. Crim. R. 61(d)(2)(i)-(ii).
[10] This Court affirmed Nastatos' sentencing on April 15, 2014, and he filed a *pro se* Rule 61 motion for postconviction relief on April 8, 2015.
[11] Super. Ct. Crim. R. 61(i)(3); *Malloy v. State*, 16 A.3d 938, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011) (TABLE).
[12] *See infra* at ¶¶ 20-21.

references made by the State; 2) to object to Officer Clarke's impermissible hearsay testimony; 3) to object to the State's prejudicial direct examination of the complaining witness; 4) to object to the court's inadequate jury/limiting instruction on inadmissible evidence; 5) to review the complaining witness's cell phone records; and 6) to move for the recusal of the trial judge prior to sentencing.[13]

(16) To prevail on claims of ineffective assistance of counsel, Nastatos must meet the requirements under *Strickland v. Washington*:[14] (a) deficient attorney performance, i.e. counsel's representation fell below an objective standard of reasonableness, and (b) prejudice resulting from counsel's error.[15] To show prejudice, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[16] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[17] It requires more than some "conceivable effect on the outcome of the proceeding," but less than showing the unreasonable conduct "more likely than not altered the outcome in the case."[18] When conducting an analysis under *Strickland*, there is no specified order and if there is an insufficient showing on one prong, there

---

[13] Nastatos argues claim six in Part IV of his opening brief. Opening Br. at 13 n.11; *see id.* at 38-43.

[14] 466 U.S. 668 (1984).

[15] *Id.* at 687; *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014).

[16] *Strickland*, 466 U.S. at 687, 694.

[17] *Id.* at 694.

[18] *Id.* at 693.

8

is no need to address the other.[19] "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[20]

(17) The Superior Court approached the prejudice prong first. On the charges of Breach of Conditions of Bond During Commitment and Non–Compliance with Bond Conditions, the Superior Court found that the only disputed issue was whether Nastatos knowingly had contact with Koval.[21] The court found that the

> evidence that Nastatos had contact with Koval was extensive and incontrovertible. The content and context of the communications, all of which were read to the jury by Koval during her testimony, clearly established that Nastatos was communicating with Koval in breach of the no contact orders. In addition, Nastatos admitted to Officer Clarke that he sent communications to Koval.[22]

Accordingly, the court found that these guilty verdicts were not affected by "knowing that Nastatos had been incarcerated and had mental health issues, any alleged improper hearsay testimony from Officer Clarke, any alleged improper questioning of the complaining witness on direct examination, or the absence of an adequate limiting or cautionary instruction."[23] On the stalking and harassment charges, the Superior Court found that the only real disputed issue was the effect of

---

[19] *Id.* at 697.
[20] *Id.*
[21] *State v. Nastatos*, 2019 WL 2092016, at *10 (Del. Super. May 13, 2019) (record citations omitted) (hereinafter "Opinion").
[22] *Id.*
[23] *Id.*

9

Nastatos' conduct on Koval.[24] The court found that Nastatos was successful in arguing a lesser effect when the jury convicted on the lesser-offense of harassment.[25]

(18) Nastatos argues that the court did not address the specific effects of each error that caused individual and cumulative prejudice. For most claims, Nastatos argues, in various ways, that the Superior Court did not properly consider, or give appropriate weight to, the evidence and mistakes made.[26] For others, he argues that the Superior Court erred because it misunderstood his argument.[27] The State generally argues that the Superior Court was correct.[28]

---

[24] *Id.*

[25] *Id.*

[26] For the first claim, he argues that the court was required to perform a *Getz* analysis, which would have excluded such evidence, and did not consider his counsel's failure to request a *Getz* analysis. For his second claim, he argues that the court failed to properly consider the significance of the testimony. On his third claim, Nastatos argues that the court disregarded how it went to his central defense of raising doubt of identification. For his fourth claim, he argues that the court overlooked that the jury heard inadmissible evidence without any instruction and that there were better curative instructions available.

[27] For his fifth claim, he argues that the court misunderstood the issue. He argues that the records could have provided information beneficial to Mr. Nastatos' defense even without actual text messages, but that the court believed they were only valuable if contained actual messages. He argues the court overlooked the fact that the attorney conceded that his failure to review the records was non-strategic and could have aided his defense. For his sixth claim, he argues that the court erred because it misunderstood the issue. He argues that he raised a claim that trial counsel was ineffective by not filing a motion for recusal prior to sentencing, whereas the court considered whether the judge was biased.

[28] The State argues that the charges were straightforward and the trial evidence was clear and overwhelming; the record supports the Superior Court's factual finding that Nastatos was the person who sent the messages and letters; the jury acquitted him of stalking, indicating adherence to the court's instructions; and *Gertz* does not apply because there is no true dispute that he sent the messages because he admitted in his police interview.

10

(19) Here, the Superior Court relied on an abundance of evidence supporting the jury's findings. Nastatos admitted to sending messages and letters to Koval,[29] numerous witnesses testified that Nastatos pursued Koval,[30] and the jury responded to Nastatos' arguments about the level of harm by reducing the Stalking charge to Harassment. While the Superior Court stated at trial it was near the end of its patience with defense counsel's errors,[31] we agree with the Superior Court's conclusion here that there was sufficient evidence to justify a conviction even with all of the alleged errors. The Superior Court analyzed the claims and reached a conclusion supported by the record—it did not abuse its discretion when determining that Nastatos failed to show prejudice from the alleged errors.

(20) Next, Nastatos argues that the Superior Court violated his due process rights when it denied him access to cell phone materials needed to substantiate his alleged *Brady* and ineffective assistance claims. He argues that denying access to the phone records "impeded the flow of information necessary for [] Nastatos to corroborate his allegations of prejudice and infringed on his constitutional right to due process of law."[32] In his Amended Motion, Nastatos requested the State produce Ms. Koval's cell phone records for inspection by postconviction counsel.[33]

---

[29] App. to Opening Br. at A114.
[30] *Id.* at A100, A106-08.
[31] *Id.* at A54.
[32] Opening Br. at 21.
[33] App. to Opening Br. at A240.

11

(21)   The Superior Court first found that Nastatos' argument of a possible *Brady* violation was procedurally barred.  Under Rule 61(i)(3), a ground for relief not asserted in the proceedings leading to a conviction is barred unless an exception applied.[34]  Nastatos acknowledges that trial counsel did not seek relief—either by reviewing the records or claiming a *Brady* violation—when he claims ineffective assistance of counsel for such failure.  Thus, he is procedurally barred unless he claims that the Superior Court lacked jurisdiction, "new evidence exists that creates a strong inference that [he] is actually innocent in fact," or "a new rule of constitutional law, made retroactive to cases on collateral review . . . applies to [his] case and renders the conviction [] invalid."[35]  Nastatos' failure to plead any of these exceptions procedurally bars the claim of a possible *Brady* violation.

(22)   He also raises a related ineffective assistance claim, which he raised in the first group of claims, arguing ineffective trial counsel because counsel failed to review the records when the State provided the opportunity.  But, the findings above—that there was still sufficient evidence to convict Nastatos—similarly support that this claim does not survive the prejudice prong of *Strickland*.  Thus,

---

[34] Super. Ct. Crim. R. 61(i)(3).

[35] Super. Ct. Crim. R. 61(i)(5); Super. Ct. Crim. R. 61(d)(2)(i)-(ii).  It appears that the Superior Court applied the wrong version of Rule 61 because it looked to *Johnson v. State*, 129 A.2d 882, 2015 WL 8528889 (Del. Dec. 10, 2015) (TABLE), which applied an earlier version of Rule 61 containing the "miscarriage of justice" exception to a similar *Brady* claim for postconviction relief.

12

because his *Brady* claim is barred and ineffective assistance claim fails, the Superior Court did not violate his due process rights by denying further discovery.[36]

(23) Nastatos also argues that the Superior Court erroneously denied his claim that appellate counsel was ineffective for failing to raise cumulative error on direct appeal. He claims that counsel's decision was "objectively unreasonable" because it denied him the "opportunity for appellate review of multiple trial errors and left him with a zero percent chance of reversing his convictions."[37] He argues that raising a "long-shot" claim is "preferential to filing no claim at all," and that counsel's strategic decision was not informed.[38]

(24) Under *Strickland*, there is a "strong presumption that counsel's conduct falls within the wide range" of reasonableness.[39] "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support

---

[36] Nastatos also argues that this was not "additional discovery" because the records were offered to trial counsel during trial. We need not decide this because, regardless, there are no viable postconviction relief claims.
[37] Opening Br. at 34.
[38] *Id.* at 35.
[39] *Strickland*, 466 U.S. at 689.

13

the limitations on investigation."[40]   Further, "counsel need not advance every argument the defendant wishes to raise, regardless of merit."[41]

(25)   Nastatos' appellate counsel filed an affidavit in response to the claim for postconviction relief.  There, counsel acknowledged that she did not raise the issue of "cumulative error" on direct appeal.[42]  She stated that there were no other issues that she felt had a "chance of success on its own or that added value to the issues that she did raise."[43]  She decided not to bring the cumulative error claim because, in her experience, "there is little to no chance of success of a 'cumulative error' argument that is based on issues that were not preserved at trial."[44]  Since none of the trial errors were preserved at trial, she decided to focus on the arguments with the "best chance of success."[45]  The Superior Court determined that appellate counsel's decision was reasonable under *Strickland* because she declined to raise the issue on the belief it had "little to no chance of success" under the plain error standard.[46]

(26)   Nastatos argues that counsel was not entitled to deference because the Superior Court erred when it found that appellate counsel was informed.  But,

---

[40] *Id.* at 690-91.

[41] *Scott v. State*, 7 A.3d 471 (Del. 2010) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985), *reh'g denied*, 470 U.S. 1065 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

[42] App. to Opening Br. at A261.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] Opinion, at *12.

appellate counsel's affidavit states that "[a]fter reviewing the entire record, Counsel raised the issues that she believed, at the time, had the best chance of success on direct appeal."[47] The Superior Court properly relied on the affidavit and found that appellate counsel was informed, thus making her strategic choice "virtually unchallengeable." While Nastatos cites to a case in which this Court found plain error on a cumulative error issue,[48] his allegations that his case would have had merit are conclusory and admittedly a "long-shot."[49] He does not overcome the substantial deference to appellate counsel's strategy and our review for an abuse of discretion.

(27) Finally, Nastatos argues that the Superior Court erred when it denied his claim asserting that he is entitled to a new sentencing hearing because the court misunderstood his argument. First, he argues that trial counsel was ineffective for failing to file a motion for recusal prior to the start of the sentencing hearing. And second, he argues appellate counsel was ineffective for unreasonably limiting the scope of the sentencing argument raised on direct appeal and omitting a significant factual component of the issue. He properly raised these issues to the Superior Court.[50]

---

[47] App. to Opening Br. at A261.
[48] Opening Br. at 36 (citing *White v. State*, 405 A.2d 685, 690 (Del. 1979)).
[49] *Id.* at 35.
[50] App. to Opening Br. at A247-52.

(28)   The Superior Court found that these arguments were identical to the issue on direct appeal—whether the trial court sentenced him with a closed mind and based on impermissible and erroneous facts—and accordingly found the arguments had no merit.[51]  While we find that the arguments were not identical, we agree with the result.

(29)   For this ineffective assistance of trial counsel claim, Nastatos notes that the sentencing judge denied actual bias, and we affirmed that the trial court did not sentence him with a closed mind or impermissible and erroneous facts.[52]  Nastatos argues that a motion for recusal would have been successful because of the appearance of bias.[53]  But, even if a motion for recusal would have been successful, Nastatos does not effectively argue that a similarly non-biased sentencing judge would have reached a different sentencing result.  Because Nastatos fails to show that but for the trial counsel's error, the resulting sentence would have been different, his claim fails under *Strickland*.

(30)   His ineffective assistance of appellate counsel claim fails for the same reasons his other ineffective assistance of appellate counsel claims fail.  Appellate

---

[51] Opinion, at *12.

[52] *Nastatos*, 91 A.3d at *5.

[53] Opening Br. at 42 (citing the test under *Los v. Los*, 595 A.2d 381, 384-85 (Del. 1991) ("First, [the judge] must, as a matter of subjective belief, be satisfied that he can proceed to hear the cause free of bias or prejudice concerning that party.  Second, even if the judge believes that he has no bias, situations may arise where, actual bias aside, there is the appearance of bias sufficient to cause doubt as to the judge's impartiality.")).

counsel is not required to make every argument. In addition to appellate counsel's affidavit,[54] counsel's briefing at the time indicates she was informed on the record,[55] thus affording her strategy substantial deference. Nastatos argues that there was no rational basis for not raising this issue and its omission made the appeal deficient. But, there are a multitude of rational reasons to not raise this issue,[56] and omitting potentially meritorious evidence does not make the argument deficient. He does not overcome the substantial presumption that counsel's strategy was within the range of reasonableness, and the claim fails under *Strickland*.

NOW, THEREFORE IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice

---

[54] App. to Opening Br. at A261.

[55] *See id.* at A173-89.

[56] Trial counsel only raised a vague memory of what he thought the judge said on an unspecified date, but, he said that "I'm not asking for recusal." *Id.* at A142-43.

17